775 P.2d 1201

Richard J.T. ANDERSON, an individual,
Plaintiff-appellant,

v.

ANDERSON, KAUFMAN, RINGERT AND CLARK, CHARTERED, an Idaho professional service corporation, now known as Ringert, Clark, Harrington, Reid, Christenson and Kaufman, Chartered, an Idaho professional service corporation; Akar, Inc., an Idaho corporation; William F. Ringert; D. Blair Clark; James G. Reid; Jeffrey R. Christenson; Andrew M. Harrington; and James P. Kaufman, individuals, Defendants-respondents.

ANDERSON, KAUFMAN, RINGERT, AND CLARK, CHARTERED, an Idaho professional service corporation, now known as Ringert, Clark, Harrington, Reid, Christenson and Kaufman, Chartered, an Idaho professional corporation, Counterclaimants-respondents,

v.

Richard J.T. ANDERSON, an individual, Counterdefendant-appellant.

No. 17303.

Supreme Court of Idaho.

June 7, 1989.

Rehearing Denied July 25, 1989.

**360**

Elam, Burke & Boyd, Boise, for plaintiff-appellant. Robert M. Tyler, Jr., argued.

Holland & Hart, Langroise, Sullivan, Boise, for defendants-respondents. Steven B. Anderson argued.

BAKES, Chief Justice.

Richard J.T. Anderson (Anderson) sued the members of his former law firm, now called Ringert, Clark, Harrington, Reid, Christenson & Kaufman (the firm), and the firm itself over the value of his interest in the shares and assets of the law firm professional corporation.[1] The firm counterclaimed alleging that Anderson, as president and office manager, had paid himself $27,138.00 in excessive salaries and breached his fiduciary duty to the firm by receiving undisclosed payments from firm clients. After an extended trial, the district court ruled in favor of both parties on their respective claims, which resulted in a substantial judgment for the firm because its counterclaim was significantly greater than Anderson's claim. Anderson appeals the trial court's holding that he was equitably estopped from asserting a statute of limitations defense to the firm's counterclaim. Anderson also appeals the trial court's award to the firm of punitive damages, attorney fees and costs. We affirm the trial court's judgment on all matters except the award of attorney fees, which we reverse.

## I

### FACTS AND PROCEDURE

Anderson is an attorney who practiced law in his father's firm until his father, Eugene Anderson, died in 1972. At that time Anderson, Sam Kaufman and William Ringert, two other associates in his father's firm, formed two corporations (AKAR, Inc., which held the law firm assets, and AKAR, Chartered, a professional corporation through which the firm engaged in the practice of law). As manager and president of the firm from 1972 until May, 1984, Anderson maintained all corporate books and records, performed accounting work for the firm, prepared its income tax returns, computed and paid the salaries and bonus compensation for all lawyers in the firm, and had final review over client billings. He was compensated by the firm for management work from 1979 on.

To keep track of the hours worked each day, the firm's attorneys used the DayTimer System. With this system, the attorney made a daily record of the time worked for each client. These time records were the main basis for client billings after 1979. Before 1979, the hours logged into an attorney's DayTimer were optional and essentially irrelevant in determining attorneys' salaries because each attorney received 50% of the fees he generated. The balance was retained by the firm. Beginning in 1979, the hours were computed into the salary compensation formula, and so each attorney reported his hours to Anderson, who then prepared monthly accounts from which to bill clients and to compute compensation for that attorney. These accounting ledgers were firm documents prepared and maintained under Anderson's supervision and control. As corporate documents, the ledgers were available for review by all corporate shareholders in the firm. The DayTimers, however, were kept personally by each attorney, if they were kept at all. On January 2, 1985, the firm terminated Anderson both as an employee and as an officer and a director of the corporation (allegedly because Anderson had been manipulating salaries and corporate records). After termination Anderson sued the firm asserting several claims for relief, including the value of his shares in the corporations which

---

1. For simplicity, defendants (the firm and its members) are referred to throughout this opinion as "the firm."

he claimed was $177,171.67 plus interest. The firm counterclaimed alleging that Anderson wrongfully and fraudulently paid himself a management fee which was $27,138.00 more than the amount agreed by the board of directors.

The firm amended its counterclaim on August 4, 1986, after discovering on November 5, 1985, some of Anderson's personal records which disclosed that he had been personally receiving fees for work performed, fees which had not been reported as law firm earnings and deposited to the firm's account. The discovery allegedly occurred while cleaning out an old storage area of the law firm building occasioned by a leak in the roof. In the process a box of Anderson's personal records was found. Included in the box were checks from clients to Anderson, deposit slips to Anderson's personal account, and ledgers showing his banking records. The information in these records allegedly reflected that Anderson had received fees which had not been turned over to the firm, and provided the basis for the amended counterclaim which alleged breach of fiduciary duty in failing to report and pay over the fees, and added a claim for punitive damages. The omitted fees involved work done by Anderson for (1) Gem State Securities Corp. (Gem State Securities) and its subsidiary, American Reserve Life Insurance Co. (American Reserve Life), in which Anderson participated as an officer and director; (2) CDJ Associates (CDJ), a partnership formed by Anderson and his sisters for managing the estate of their father, Eugene Anderson; and (3) the Estate of Frank McCleary (the McCleary Estate) which was being probated by his father at the time of his death, and which was continued by Anderson.

At trial Anderson defended against the counterclaim, alleging that he alone, and not the firm, was entitled to the alleged non-legal fees and that he had no duty to report them or the time spent on this work. Alternatively, Anderson argued that the statute of limitations had run. The firm argued that Anderson was obliged to include these fees as corporate earnings and record them accordingly. The firm alleged that Anderson was equitably estopped from asserting the statute of limitations and (1) that firm members had no knowledge of these fees, actual or constructive, and (2) that they had no duty to investigate in light of Anderson's fiduciary duties owed toward them.

After a 7-day trial, the trial court ruled for Anderson on his claim against the firm for his corporate shares which were found to have a value of only $35,000 plus interest, and on his claim regarding his interest in the firm's extensive law library.[2] However, the trial court also ruled against Anderson on the counterclaim, finding that he had breached his fiduciary duty to the professional corporation and to its officers, directors and shareholders and had wrongfully deprived the firm of legal fees amounting to $210,591.00, which with accrued interest, totaled $260,588.00.[3] While the counterclaim was facially barred by the statute of limitations, the trial court held that Anderson was equitably estopped from asserting a statute of limitations defense to the counterclaim because of his fiduciary duty to the firm and its members. The trial court found that Anderson breached this duty by concealing material facts surrounding the receipt of direct payments from firm clients. Therefore, the firm and its members were not charged with knowledge of the concealments or obliged to investigate. The trial court also indicated that Anderson concealed the payments in such a manner that the firm members could not discover them by investigating corporate records. Additionally, the trial court found Anderson's conduct in claiming fees personally and in failing to

2. The court's judgment awarded Anderson an undivided two-thirds of "all books purchased prior to December 29, 1972." The other one-third was awarded to William F. Ringert. The law books were described in a 17-page attachment to the judgment.

3. The trial court did not make a damage award to the firm on the first count of the counterclaim concerning unauthorized and excessive payments of $27,138.00 by Anderson to himself as manager.

**362**

disclose those payments was an extreme deviation from the standards of professional conduct expected of Anderson as an attorney and as managing shareholder of the professional corporation. Consequently, the trial court awarded punitive damages of $25,000.00. The trial court also awarded $50,000 attorney fees to the law firm, together with costs as a matter of right ($4,804.75) and discretionary costs ($16,247.99). Anderson has appealed. We affirm the trial court's judgment, except as to attorney fees.

## II

### ACTUAL RELATIONSHIP BETWEEN ANDERSON AND FIRM MEMBERS

Our standard of review is to analyze the record and determine (1) whether there is substantial competent evidence to support the trial court's findings of fact, and (2) whether the trial court, in its conclusions of law, properly applied the law to the facts as found. *Pope v. Intermountain Gas Co.*, 103 Idaho 217, 646 P.2d 988 (1982); *Perry Plumbing Co. v. Schuler*, 96 Idaho 494, 531 P.2d 584 (1975); *Bischoff v. Quong–Watkins Properties*, 113 Idaho 826, 748 P.2d 410 (Ct.App.1987).

The primary issue on appeal is whether Anderson was equitably estopped from asserting a statute of limitations defense to the counterclaim. Based on its findings that Anderson had a fiduciary duty to disclose client payments to the firm, and based on the fact that he had effectively concealed knowledge of those payments from the firm, the trial court concluded that Anderson was equitably estopped.

■ The trial court found that Anderson, as president of the professional corporation and office manager of the firm, and as an attorney, stood in a fiduciary relationship both to the professional corporation and to the other officers, directors and shareholders of the professional corporation. The trial court further found that Anderson breached his fiduciary duties to the professional corporation and to his fellow officers, directors and shareholders in that he:

a. Accepted payments from firm clients and others for professional services which he rendered in the law office and for which he recorded chargeable hours in the law firm records;

b. Did not account to his fellow officers, directors and shareholders for the monies which he received from firm clients, nor did he disclose the fact of these payments at any time particularly when compensation was decided within the firm;

c. Received payments directly from firm clients and gave those clients the benefit of free overhead which was an operating expense of the corporation, paid for by his fellow officers, directors and shareholders;

d. Arbitrarily and unilaterally decided which of his services were legal and which were non-legal and then billed only for what he determined were legal services while taking payments directly for all other services.

As a result, the trial court specifically found that Anderson "is estopped from pleading any statute of limitations based upon his concealment of the material facts surrounding his receipt of direct payments from firm clients and because of the Defendants' lack of actual or constructive knowledge of the facts of such payments...." The trial court also concluded that as a matter of law firm members "had no duty to interrogate and investigate Richard Anderson and accordingly had no legal obligation to discover the existence of the payments made to Mr. Anderson directly."

On appeal, Anderson does not dispute that there was substantial evidence to support the trial court's findings that he owed a fiduciary duty and that he breached it. Rather, Anderson disputes the trial court's legal conclusion that because of Anderson's fiduciary status, the firm members had no duty to investigate the corporation's records or to interrogate him. Anderson argues that, in spite of his fiduciary duty, the firm members as corporate shareholders were charged with knowledge of all facts which would have been discoverable from an examination of corporate records, citing this Court's decision in *Nancy Lee*

*Mines, Inc. v. Harrison,* 95 Idaho 546, 511 P.2d 828 (1973). According to Anderson, the contested payments were discoverable, and therefore the counterclaim was barred by the applicable statute of limitations.

The factual record supports the trial court's ultimate conclusion that because of the actual relationship between Anderson and the firm members, and because of the manner in which the records were kept, the firm members in fact could not have discovered Anderson's breach of fiduciary duty by examining the firm's records. It was Anderson's personal records, not the firm records, which disclosed the payments of money to Anderson personally. The firm members had no right to examine his personal records. But for the fortuitous circumstances in November of 1985, those records may never have come to the attention of the firm. The fact that Anderson had recorded in his office DayTimers the time he spent working for the clients for which he personally received and kept the fees earned was not sufficient evidence, in the opinion of the trial court, to place constructive knowledge in the other members of the firm that Anderson was receiving compensation from those clients which he was not depositing to the credit of the law firm. Although the evidence is conflicting, there is substantial competent evidence to support the trial court's finding that the defendants had neither "actual [n]or constructive knowledge" that Anderson was receiving such payments personally.

The trial court found that from 1974 until 1980 Anderson performed over 2,100 hours of legal and investment work (worth over $134,000) for Gem State Securities and American Reserve Life, two of Anderson's largest clients. These hours were recorded in his DayTimers which he kept in his office. Except for a $350 monthly retainer, which went into the firm's coffers, all moneys paid to Anderson from Gem State Securities and American Reserve Life were sent to his home address. None were sent to the law firm office. They were deposited into Anderson's personal account and were never accounted for in the firm records. Although the evidence was sharply conflicting, the trial court found that Anderson did not tell any of the other officers or shareholders of the professional corporation that he was receiving these moneys. This conduct was contrary to the firm's accepted practice of depositing directly into the firm all payments for services, whether legal or non-legal. The trial court's findings support the conclusion that but for the accidental discovery of Anderson's personal checks and receipts on November 5, 1985, firm members would have had no cause to suspect that Anderson was receiving these unreported payments. After the discovery, but before Anderson became aware of the discovery, he was deposed. Anderson testified under oath (1) that he was only involved once in a single project for American Reserve Life, (2) that he did not discuss outside compensation with his law partners, and (3) that he took no office time to perform work for American Reserve Life and Gem State Securities. Testimony and other evidence at trial conflicted sharply with these statements. After reaffirming his original findings of fact and conclusions of law, the trial judge commented: "[I]n weighing the credibility of the witnesses, in cases where there was conflict between Mr. Anderson and the other witnesses, I weighed those against Mr. Anderson. I found that his credibility was impeached in various respects."

The trial court made additional findings concerning CDJ and the McCleary Estate. Between 1977 and 1984 Anderson recorded in his DayTimers time spent working on CDJ matters for which he personally received payments of over $49,000, all of which he failed to disclose to the firm or deposit to its account. Anderson also personally received $6,240.00 in 1976 for attorney and executor fees from the McCleary Estate. This sum, reimbursement for 69.5 hours of office time, also was not disclosed to the firm or deposited to its account.

There is substantial, albeit conflicting, evidence to support the trial court's finding that because of the actual relationship existing between Anderson and firm members, those members could not have discovered the various forms of misconduct

which constituted Anderson's breach of fiduciary duty.

## III

## EQUITABLE ESTOPPEL

■ Having analyzed the trial court's factual finding that firm members actually could not have discovered Anderson's misconduct, and having determined that there is sufficient evidence in the record to support this finding, we now turn to the trial court's analysis of equitable estoppel. The trial court cited *Williams v. Blakley,* 114 Idaho 323, 757 P.2d 186 (1988), and concluded as a matter of law that Anderson was "estopped from pleading any statute of limitations based upon his concealment of material facts surrounding his receipt of direct payments of firm clients and because of the [firm members'] lack of actual or constructive knowledge of the fact of such payments." In *Williams* this Court held that:

> [T]he elements of equitable estoppel are [1] a false representation or concealment of a material fact with actual or constructive knowledge of the truth; [2] the party asserting estoppel did not know or could not discover the truth; [3] the false representation or concealment was made with the intent that it be relied upon; and [4] the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice.

114 Idaho at 325, 757 P.2d at 188. *See Theriault v. A.H. Robins Co., Inc.,* 108 Idaho 303, 307, 698 P.2d 365, 369 (1985).

On appeal, Anderson contends that the trial court incorrectly stated and applied the elements of equitable estoppel and that as a matter of law the firm did not prove equitable estoppel. Anderson's contention primarily concerns the second element which requires that "the party asserting estoppel could not discover the truth." 114 Idaho at 325, 757 P.2d at 188. Anderson argues that the trial court incorrectly found the second element existed when it concluded that firm members lacked "actu-

al or constructive knowledge" of the undisclosed payments. Relying on *Nancy Lee Mines, Inc. v. Harrison,* 95 Idaho 546, 511 P.2d 828 (1973), Anderson also argues that the trial court mis-applied the second element because firm members could have discovered the truth about the payments had they checked the corporate records as they were legally obliged to do. As discussed in Part II above, the record supports the trial court's factual findings which led to the conclusion that firm members actually could not have discovered the truth of Anderson's misconduct had they checked the corporate records. Similarly, there is substantial evidence in the record to support the trial court's finding that firm members therefore did not have "constructive knowledge" of the truth of Anderson's misconduct.

The trial court made factual findings that the other elements of estoppel were also met. The trial court found that (1) Anderson concealed payments from Gem State Securities, American Reserve Life, CDJ and the McCleary Estate; (2) by having the checks sent to his home and by depositing them into his personal account, Anderson intended to conceal knowledge of the payments from his partners; and (3) because Anderson was acting in his fiduciary capacity as president and office manager, the other firm members detrimentally relied on Anderson to report all payments, which he did not do. Although the evidence was conflicting, these findings are supported by substantial competent evidence in the record and, accordingly, we affirm the trial court's conclusion that Anderson was equitably estopped from asserting a statute of limitations defense. The statute did not begin running until November 5, 1985, when firm members discovered Anderson's personal checks and deposit receipts.

The trial court's factual findings also support the conclusion that firm members acted with due diligence in filing their amended counterclaim alleging breach of fiduciary duties nine months after discovering the concealed records. Accordingly, the effect of equitable estoppel was not dissipated after the November, 1985, dis-

covery, and the counterclaim was not time-barred.

Because we affirm the trial court's equitable estoppel holding, the issue concerning whether I.C. § 5–218, 5–224 or 5–237 is the applicable statute of limitations becomes moot.

## IV

### PUNITIVE DAMAGES

■ The next issue concerns punitive damages. The trial court concluded that "Anderson's conduct in claiming fees personally and in failing to disclose the existence of those payments [from Gem State Securities, American Reserve Life, CDJ and the McCleary Estate] to his fellow officers, directors and shareholders constituted outrageous, knowing and intentional, harmful conduct which was an extreme deviation from all standards of professional conduct expected of all practicing attorneys and of Richard Anderson in particular as president and managing shareholder of the professional corporation." On appeal, Anderson argues that this conclusion is not supported by specific factual findings and that the punitive damages were erroneously awarded.

We observe that for the most part the trial court's extensive findings of fact are unchallenged. We also observe that there is sufficient evidence in the record to support the trial court's finding that Anderson's conduct constituted an extreme deviation from reasonable standards of behavior. *Cheney v. Palos Verdes Inv. Corp.*, 104 Idaho 897, 665 P.2d 661 (1983). Accordingly, we affirm the trial court's award of punitive damages to respondents.

## V

### COSTS

The trial court entered judgment on Anderson's claim against the firm in the amount of $35,000 plus interest, and entered judgment in favor of the firm against Anderson on its counterclaim for $285,588 ($260,588 compensatory damages and $25,000 punitive damages) plus interest, the $285,588 to be offset by the amount of the $35,000 judgment entered in favor of Anderson against the firm.[4] Exclusive of interest, the judgment, after offset, was in favor of the firm on its counterclaim against Anderson in the principal amount of $250,558. Based upon that judgment in favor of the firm on its counterclaim, the trial court found "that defendants are entitled to their costs pursuant to I.R.C.P. 54(d)(1)(C)—Costs as a Matter of Right—in the amount of $4,804.75. Further, [the trial court found] that defendants are entitled to their costs pursuant to I.R.C.P. 54(d)(1)(D)—Discretionary Costs—in the amount of $16,247.99." The record supports the trial court's determination that the defendant counterclaimants were the prevailing parties, and accordingly we affirm the trial court's award of costs.

## VI

### ATTORNEY FEES

The trial court awarded the defendants $50,000 for attorney fees. The trial court stated two reasons, both of which we conclude were erroneous as a matter of law.

First, the trial court found that while the firm had attempted to settle the case since the commencement of the action, "the plaintiff has unreasonably subjected the parties to the costs of the litigation." Relying on the case of *Sigdestad v. Gold*, 106 Idaho 693, 682 P.2d 646 (Ct.App.1984), the trial court concluded that Anderson had not reasonably attempted to settle the case, and therefore the trial court found "that the plaintiff pursued this action frivolously, unreasonably and without foundation."

■ Just last year this Court reasserted our earlier holding in *Payne v. Foley*, 102

---

**4.** Regarding that part of the court's judgment awarding Anderson a substantial part of the firm's law library, the judgment did not make Anderson a monetary award in the judgment, but merely decreed that "all books purchased prior to December 29, 1972, shall belong two-thirds to Plaintiff Richard J. T. Anderson and one-third to William F. Ringert, as set out in Exhibit A hereto."

Idaho 760, 639 P.2d 1126 (1982), that in determining whether or not to award attorney fees under I.C. § 12–121 the trial courts may not consider the extent of any settlement negotiations which the parties may or may not have engaged in. In *Ross v. Coleman*, 114 Idaho 817, at 836, 761 P.2d 1169, at 1188 (1988), this Court stated, quoting from *Payne*, "There is no authority in a trial court to insist upon, oversee, or second guess settlement negotiations, if any, and certainly no authority to impose sanctions for 'bad faith' bargaining." *Ross v. Coleman* overruled *Sigdestad v. Gold sub silentio*. We again affirm our holdings in *Payne v. Foley*, and *Ross v. Coleman*, *i.e.*, "that the failure to enter into or conduct settlement negotiations is not a basis for awarding attorney fees under I.C. § 12–121 and I.R.C.P. 54(e)(1)." *Id.* The language in *Sigdestad v. Gold*, 106 Idaho 693, 682 P.2d 646 (Ct.App.1984), to the contrary is in error and is expressly disapproved.

■ Aside from the trial court's statement that Anderson's failure to settle "has unreasonably subjected the parties to the costs of the litigation," the trial court made no written findings as to the basis and reasons for awarding such attorney fees as required by I.R.C.P. 54(e)(2). The trial court made no analysis of the issues litigated to support its conclusion that "the plaintiff pursued this action frivolously, unreasonably and without foundation." Without the requisite findings required by I.R.C.P. 54(e)(2), the trial court was not authorized to make an award of attorney fees. From a review of the record we conclude that in any event there is no support in the record for the trial court's conclusion that "the plaintiff pursued this action frivolously, unreasonably and without foundation." Actually, Anderson prevailed on his complaint, and a substantial judgment was rendered in his favor, including $35,000 cash and a very substantial part of the firm's law library, as set out in the 17–page appendix attached to the court's judgment. While admittedly the judgment for Anderson was less than he sought in his complaint, the amount of the judgment in his favor was substantial, not *de minimis*.

Anderson's complaint included other claims which, although he did not prevail on all those claims, were claims which raised legitimate triable issues of fact. Accordingly, even if the trial court had made the written findings required by I.R.C.P. 54(e)(2), the record in this case would not support a finding that Anderson pursued his complaint frivolously, unreasonably and without foundation.

With regard to Anderson's defense to the firm's counterclaim, Anderson asserted the defense of statute of limitations which facially had run. The unreported legal fees which formed the basis for additional counts in the firm's amended counterclaim were received between 1973 and 1981, variously five to thirteen years before the filing of that counterclaim on August 4, 1986. Anderson's answer to the firm's counterclaim raised the defense of the statute of limitations which on its face was a valid defense. At trial the burden fell upon the firm to prove that Anderson was equitably estopped from asserting the statute of limitations defense. *Williams v. Blakley*, 114 Idaho 323, 757 P.2d 186 (1988). But for the trial court's invocation of the doctrine of equitable estoppel, the statute of limitations defense in the counterclaim would have been a valid defense.

The trial court recognized that, for the firm to prevail on their equitable estoppel answer to Anderson's invocation of the statute of limitations defense, the firm was required to prove the elements of equitable estoppel, which "are a false representation or concealment of a material fact with actual or constructive knowledge of the truth; the party asserting estoppel did not know or could not discover the truth; the false representation or concealment was made with the intent that it be relied upon; and the person to whom the representation was made, or from whom the facts were concealed, relied and acted upon the representation or concealment to his prejudice." *Williams v. Blakley*, 114 Idaho at 325, 757 P.2d at 188. Most of the time consumed at trial involved the firm's proving the amount of its counterclaim, and proving its claim that Anderson was equitably es-

topped from asserting the statute of limitations which would otherwise have long since run on the counterclaim. Anderson asserted before the trial court, and again on appeal, that firm members were charged with knowledge of what was in the corporation's books and records, relying upon this Court's decision in *Nancy Lee Mines, Inc. v. Harrison*, 95 Idaho 546, 511 P.2d 828 (1973), and that they could have discovered the failure to report the excluded fees by examining his daily time records. While we have held in Part II that there was substantial competent evidence to support the trial court's finding that the defendants could not reasonably have discovered Anderson's failure to deposit fees collected from clients (Gem State Securities, American Reserve Life, CDJ, and the McCleary Estate) into the firm account merely by reviewing corporate records, there was certainly a triable issue of fact on that question. Accordingly, it was not unreasonable or frivolous for Anderson to assert the statute of limitations defense to defendants' counterclaim.

Additionally, although the firm's counterclaim contained a count charging that Anderson had breached his fiduciary duty by paying himself excessive compensation in the amount of $27,138.00, Anderson prevailed on his defense to that part of the firm's counterclaim because the trial court made no award in favor of the firm on that count of its counterclaim. Accordingly, we conclude that the trial court erred in finding that "the plaintiff pursued this action frivolously, unreasonably and without foundation." The trial court's award of $50,000 in attorney fees is reversed.

The judgment of the trial court is affirmed, with the exception of the award of attorney fees in the amount of $50,000, which is reversed. The cause is remanded for entry of an amended judgment consistent with this opinion. No costs or attorney fees awarded on appeal.

BISTLINE, HUNTLEY and JOHNSON, JJ., and McFADDEN, J. Pro Tem., concur.

BISTLINE, Justice, separately concurring in the result.

Part VI of the Court's opinion brings to the fore that which I wrote in *Payne v. Foley* relative to consideration of pretrial settlement negotiations. I am quoted correctly, and of course, gratified. However, I am not quoted fully. This occasion is used to add the ensuing sentences which qualified the view there expressed: "That is not to say, however, that a trial court ought not to make inquiry as to the possibility of a negotiated settlement. This has long been an acceptable procedure, and in my opinion a commendable one." *Payne v. Foley*, 102 Idaho at 763, 639 P.2d at 1129.

With there having been three votes in *Ross v. Coleman* accepting my *Payne v. Foley* views, thus making that a majority position, perhaps the remainder of those views will likewise gain credit. To such I add my recollection that we, as a body, have also agreed that although district court judges may inquire as to possibilities of settlement, they, and the attorneys before them, should not discuss amounts that have been mentioned. In no event should settlement amounts being bandied around be made known to the court. Such would exclude, of course, casual discussions months later when a particular case is only history.

Regarding *Sigdestad*, on rereading that opinion from the Court of Appeals, I believe now, as I did then, that it was well-written and explanative. *Ross v. Coleman* had not yet been written; hence my remarks in *Payne v. Foley* were just that—remarks—when *Sigdestad* was written.