471 P.2d 590

George M. KELLEY, Jr., Plaintiff-Appellant,

v.

Perry F. WHEYLAND, Defendant-Respondent.

No. 10428.

Supreme Court of Idaho.

July 2, 1970.

---

22. Instruction No. 2 given by the trial court.

23. Instruction No. 14 given by the trial court.

736

---

Lawrence H. Duffin, Burley, for appellant.

Thomas H. Church, Burley, for respondent.

SHEPARD, Justice.

This is an action to set aside and cancel two deeds and a bill of sale on the ground that they were made by an incompetent grantor and were obtained by fraud and undue influence.

Plaintiff-appellant Kelley is the grandson and defendant-respondent Perry Wheyland is the son of the deceased grantor Jessie A. Wheyland. The instruments which are the subject of this action conveyed substantially all of the real and personal property of the grantor to her son. The conveyances were admittedly without consideration and were made in 1966 when the grantor, then a widow, was 85 years of age. She thereafter died intestate.in 1968. If she had died possessed of any estate the appellant and respondent under the statutes governing succession would each be entitled to receive one-half of her estate.

Following the death of the grantor Jessie Wheyland in 1968 appellant Kelley brought an action in the district court seeking to have the conveyances set aside. The action was tried to the court without a jury and at the conclusion thereof the trial judge found that the grantor Jessie Whey-land was competent and that the transfers were without fraud, coercion or undue influence. Judgment was entered denying the relief sought by plaintiff, quieting title to the real property in the defendant, and adjudging the personal property to be the sole and separate property of the respondent free and clear of any claim of the appellant.

An appeal from said judgment was perfected and errors assigned to the action of the trial court. Appellant originally claimed that the court erred in not finding that the grantor Jessie Wheyland lacked mental competence. However, this assignment of error has been abandoned. The appellant further asserts that the trial court erred in failing to find the existence of a fiduciary relationship between the grantor and her son Perry Wheyland. Appellant by his remaining assignments of error contends that the trial court erred in failing to find and conclude that the facts as disclosed at trial indicated a confidential and fiduciary relationship between Perry Wheyland and his mother, a lack of consideration for the conveyances, and thus established a presumption of fraud and undue influence. Appellant further argues that such presumption thereby shifted the burden of proof to the defendant Perry Wheyland and placed upon him the necessity to prove lack or non-existence of the elements of fraud and undue influence.

The trial court entered the following extensive findings of fact after the trial: Jessie and Michael Wheyland owned and operated a ranch of approximately 1,000 acres in Cassia County, Idaho. Beginning in 1946, the ranch had been leased to other persons on a share crop basis, with the lessors and lessees to each receive 50 per cent of the hay and 50 per cent of the cattle increase. Jessie and Michael Wheyland, however, remained active in the operations of the ranch. Michael Wheyland died in 1963 and shortly thereafter his son Perry Wheyland, the respondent herein, moved onto the ranch with his mother and operated the ranch on the same basis as had the previous lessees, to-wit: 50 per cent of the

hay and cattle increase. Perry Wheyland was appointed administrator of his father's estate of which his mother was the sole beneficiary. All real and personal property of the estate of Michael Wheyland was distributed to his widow Jessie Wheyland.

Appellant Kelley filed objections to Perry Wheyland's administration of the estate of Michael Wheyland. This action distressed his grandmother and caused strained relations between them. The objections filed by Kelley were not allowed by the probate court.

The trial court further found that: Jessie Wheyland led a long, strenuous and vigorous life in which she participated in the duties and responsibilities of operating the cattle ranch. She was astute in the buying and selling of cattle, hay and grain. She was a strong, firm person who could not be led by anyone. Until she became bedfast approximately 30 days prior to her death in 1968 she required little personal care from others. Although she became somewhat repetitious in her conversations at times, her mental capacity remained almost unchanged up until the date of her death. She knew and understood the nature of her property and understood the nature and effect of the conveyances at issue here. She informed various persons of her intention to give all of her property to her son Perry Wheyland before, on the same day as, and following the date of the execution of the instruments in question here. She executed the deeds and bill of sale with full understanding and of her own free will and volition and intended to do just that to the exclusion of her grandson, the appellant herein. While she trusted her son Perry Wheyland and relied upon his judgment in business matters and in the operation of the ranch, she used her independent judgment in business matters. The instruments which are the subject of this action were made following and on the basis of independent advice which she understood. She consulted with an attorney and advised him that she desired to avoid probate proceedings following her death.

Upon her request the attorney drew up the instruments in question here and again discussed the effect of the instruments with her. The discussion took place out of the presence of the defendant. The defendant had neither the control nor direction of his mother. The defendant was not active in the preparation or execution of the conveyances.

All of the above findings of the trial court are substantiated by the evidence although at times the evidence is somewhat conflicting. For example, appellant points to certain testimony of Perry Wheyland to the effect that his mother trusted him and respected his judgment. The transcript, on the other hand, is replete with testimony of friends and neighbors of Jessie Wheyland who had known her well over periods as long as 50 years. Those persons testified extensively to her competence in business affairs up until the time of her death and that she exercised her own judgment and could not be led. There is also testimony that Perry Wheyland had mortgaged his mother's cattle and had applied for a mortgage on his mother's property. Such testimony, however, was controverted and we cannot say that the trial court erred in failing to make the findings sought by the appellant herein because of such conflicting evidence.

Almost all of appellant's argument therefore is predicated upon the failure of the trial court to find and conclude that the facts disclosed at trial resulted in a presumption of fraud and undue influence thereby shifting the burden of proof to the defendant Perry Wheyland and placing upon him the necessity to prove nonexistence of the elements of fraud and undue influence. Appellant's argument is almost completely based upon the case of McNabb v. Brewster, 75 Idaho 313, 272 P.2d 298 (1954), and other cases cited therein. It is therefore necessary that analysis at some length be made of *Brewster* and the prior cases.

We point out initially that the case of McNabb v. Brewster, supra, is almost

unique in Idaho jurisprudence for several reasons. First, there is no actual agreement of a majority of the court on disposition of the case, and secondly, we do not believe that the portion of *Brewster* relied upon by appellant herein was either necessary or appropriate to the decision in *Brewster*. In *Brewster* an elderly couple was infirm, senile, unable to care for themselves, and could neither read nor write. All of the property of the elderly couple was deeded to a daughter because she otherwise refused to care for them. The deed was conditioned upon her obligation to care for her parents for the remainder of their lives. The opinion of the court in *Brewster* stated at 75 Idaho 317, 272 P.2d 300:

> "The evidence is sufficient to justify cancellation of the deed on the ground of Mrs. Brewster's neglect and refusal to care for the decedents [her parents]."

The court then, however, proceeded to discuss a rule indicating that the existence of a fiduciary relationship between the grantor and grantee, coupled with a lack of consideration for the conveyance, placed upon the grantee the burden of establishing that the transaction was fair, just and free from any taint of fraud or undue influence. Numerous earlier Idaho cases were cited as authority for that rule.

Harrington v. High, 39 Idaho 555, 228 P. 883 (1924); and Oatman v. Hampton, 43 Idaho 675, 256 P. 529 (1927), were cases in which grantors claimed to have been defrauded by grantees and the court in those cases found no intent to make deeds. For example, the court in *Oatman* found that two Indian wards, living on the reservation and having to talk through interpreters, had been grievously cheated. They sought a loan which was to be secured by a mortgage; however, the instrument signed by them with their mark turned out to be a deed. The court stated:

> "We can find no substantial evidence to support the finding that these Indians knew they were signing a deed. On the contrary, the positive evidence, complemented by the circumstances arrayed, convinces us that they did not."

The case of In re Estate of Randall, 60 Idaho 419, 93 P.2d 1 (1939), dealt with a situation where proponents of a will had altered the will prepared by a lawyer for their mother's signature. The court therein adopted a rule that the mere existence of a confidential relationship between a testator and a beneficiary does not establish undue influence in and of itself unless it appears that the beneficiary was active in the preparation and execution of the will.

The case of In re Lunders' Estate, 74 Idaho 448, 263 P.2d 1002 (1953), adhered to the rule laid down in *Randall*. The case of Blake v. Blake, 69 Idaho 214, 205 P.2d 495 (1949), dealt with the sole question of whether a gift or transfer of a son's patrimony to his mother had been proven by the evidence. The question of undue influence did not arise in *Blake*. The case of Claunch v. Whyte, 73 Idaho 243, 249 P.2d 915 (1952), also involved the giving of a conditional deed. The court therein held:

> "Manual delivery of a deed by the grantor to the grantee with the understanding that it is not to become effective until the death of grantor is not such a delivery as will pass the title."

In none of the cases underlying McNabb v. Brewster, supra, is there found any support for the rule contended for by the appellant in the case at bar. The question presented herein is whether the existence of a possible fiduciary relationship (not found by the trial court and controverted in the evidence), coupled with an admitted absence of consideration, placed a burden of proof upon the grantee requiring him to prove the negative of fraud and undue influence.

There are many facts indicated by the evidence in this case which distinguish it from *Brewster*. Respondent and his wife cared for and provided a home for his mother until her death in 1968, and in any event there is no evidence that the gift was in any way conditional. The grantor had

the clear intention to make a gift of her property to her son and intended to exclude her grandson. She indicated such intent to various friends before the execution and also after the execution of the instruments. The evidence does not show any participation or activity by the respondent in the preparation or execution of the conveyances and instruments in question here. On the contrary, the evidence indicates that the instruments were prepared by a lawyer at her request and that, in the absence of the grantee, she had the benefit of the lawyer's advice, plus that of a federal land bank official.

■ At the trial of this matter plaintiff-appellant Kelley sought to prove circumstances from which an inference of fraud and undue influence might arise. On the other hand, the defendant-respondent introduced ample evidence showing all of the circumstances surrounding the making of the conveyances, the donor's intent, the independent advice had and received by the grantor, and the mental and physical capacity of the grantor prior, at the time of, and following the execution of the conveyances. It cannot be said that the defendant-respondent failed to meet the evidence of the plaintiff at trial.

The trial court heard all of the testimony, observed the witness and made its findings and conclusions based on substantial evidence. We have said many times that the findings and conclusions of a trial court, when based on competent and substantial, although conflicting, evidence, will not be disturbed. We hold therefore that regardless of where the burden of proof lay in this case, the defendant-respondent amply met and rebutted the case presented by plaintiff-appellant. While the rule urged by the appellant of the *Brewster* case may have some validity under certain circumstances, it certainly has no applicability to the facts and circumstances of the case at bar.

It follows that the judgment of the trial court is affirmed. Costs to respondent.

McFADDEN, C. J., and McQUADE, DONALDSON and SPEAR, JJ., concur.