576 P.2d 1055

**Helen M. ENGLESBY, as guardian ad litem of Anna Nisula, a widow, Plaintiff-Appellant,**

v.

**Franklin S. NISULA, Elmer J. Nisula, Arthur G. Nisula and James P. Nisula, Defendants-Respondents.**

No. 12359.

Supreme Court of Idaho.

March 29, 1978.

Wayne E. Davis of Alexanderson, Davis, Rainey & Whitney, Caldwell, for plaintiff-appellant.

Darla S. Williamson of Williamson & Killen, McCall, for defendants-respondents.

SHEPARD, Chief Justice.

This is an appeal from a judgment in favor of defendants-respondents in an action brought by plaintiff-appellant to set aside a warranty deed on the basis of undue influence. We *affirm.*

On March 8, 1974, Anna Nisula, an 86-year-old widow, deeded title to the family ranch in Valley County to four of her five sons. At that time she also executed a will

leaving her home in Donnelly, Idaho, together with her checking and savings accounts to the same four sons, Franklin, Elmer, Arthur and James. In her will she disposed of certain bonds valued at $1,800 each to her children named on the bonds. The will also refers to a written agreement which was executed contemporaneously with the warranty deed which requires the four sons to pay Anna $2,000 per year until her death as a type of annuity. Upon the death of Anna the four sons are to pay another son, Rayno, $5,000 and Anna's funeral expenses.

Plaintiff-appellant Englesby is a daughter of Anna Nisula and brought the instant action to set aside the warranty deed of March 8, 1974, on the basis that a confidential relationship existed between her mother and the four brothers (grantees of the deed) and that the deed was obtained through the exercise of undue influence.

At trial the evidence was substantially conflicting. The following facts, however, appear to be undisputed. No money was paid or received on March 8, 1974; however, thereafter the four brothers have made the $2,000 annual payments. On March 21, 1974, Anna entered into a diabetic coma and became mentally incompetent, and she will apparently remain in a nursing home for the rest of her life. At the time of trial her nursing home expenses were more than $700 per month, and her only income was the $2,000 annual payment from her sons and $106.96 per month received from Social Security. Her remaining assets at that time included her real estate in Donnelly, valued at approximately $12,000, approximately $4,900 in a savings account and approximately $5,500 in a checking account.

On the one hand, Anna's daughters testified that Anna had been mentally incompetent since her hospitalization in 1971. They testified that Anna was illiterate in the English language and commonly relied upon the Finnish language. She was in poor physical and mental health, and she had severe lapses of memory to the end that she was unable to manage her own business affairs. On the other hand, the sons and other witnesses testified that Anna had a minimum grasp of the English language, that her chronic health problem was her legs, and that she had no unusual mental problem. They testified that the sons had visited the mother most frequently and had rendered the most help on the ranch. Anna had repeatedly stated that she had intended to leave the ranch to her sons, which was in conformance with the local Finnish-American custom. The sons also testified that the plan for deeding the ranch had been initiated by their mother, who had approached each of them. Their mother also stated that Rayno would get cash rather than an interest in the ranch because he had previously received other consideration. The four sons each testified that they thought James was the logical choice to assist his mother since he lived close to her and handled her books. James took his mother to an attorney Williamson and told the attorney what to include in the documents. He also arranged to have two Finnish-speaking non-family witnesses present on March 8, 1974. Those witnesses both testified that they translated and explained to Anna each document paragraph by paragraph and continually asked her if she understood the terms. They testified that Anna was able to discuss past events with them and that they believed she understood that the deed represented a present and permanent transaction.

At the conclusion of trial the district court found that on and before March 8, 1974, Anna Nisula was mentally competent and capable of understanding her financial affairs and her desires for the disposition of her property. The court found that Anna executed the warranty deed and the accompanying agreements as a product of her own free will and with the intention to permanently divest herself of the ranch property ownership. It also found that part of her plan for the disposition of the property was in light of a limited consideration, which had been paid.

Plaintiff-appellant asserts only that the lower court erred in failing to find a confi-

dential relationship which necessitated the setting aside the deed. Appellant relies exclusively on *McNabb v. Brewster,* 75 Idaho 313, 272 P.2d 298 (1954), as holding that where a confidential relationship exists between a grantor and a grantee of a deed and there is no consideration, a presumption of fraud and undue influence arises shifting the burden of proof to the grantee to show fairness and good faith in the transaction.

In *McNabb* the grantors were infirm, senile, totally illiterate and completely dependent upon the grantee. The grantee of the deed refused to care for the grantors unless they deeded her all of their property. The deed in *McNabb* was construed to be a conditional gift which was contingent upon the continued care of the grantors, but which the grantee had discontinued.

However, *McNabb* was strongly criticized in *Kelley v. Wheyland,* 93 Idaho 735, 471 P.2d 590 (1970), and it was suggested that the *McNabb* ruling governing a shift of the burden of proof to the grantee only had validity under circumstances similar to those of *McNabb.* We note that the facts of *Kelley* and the instant case are surprisingly similar. In *Kelley* the aged widow and grantor Wheyland transferred the bulk of her estate through the use of two deeds and a bill of sale. Wheyland, like Anna Nisula, was an independent person, and while she was occasionally repetitious in conversations, friends and neighbors testified that she was competent in business matters and exercised her own judgment. She operated the family ranch with the assistance of her son Perry, the grantee, and there was no doubt that she intended to transfer the bulk of her property to the grantee to the exclusion of her grandson, the plaintiff-appellant in *Kelley.* The *Kelley* court held that the grantee Perry presented sufficient evidence regardless of where the burden of proof lay. However, because the *McNabb* rule was inapplicable, the burden of proof was on the party attacking the transfer. That party had failed to sustain the burden. We find the facts in the instant case more parallel to *Kelley* than *McNabb.* In the instant case, as contrasted with *McNabb,* there has been no

failure of performance by the grantees. Such is at least partial consideration.

Here the trial court found "the execution of the deed and the agreement was not induced by fraud or misrepresentation by the defendants or any other person." We find no error in that finding and it is supported by the evidence, although such is conflicting. The court also found the evidence submitted by the Nisula brothers to be more credible and of more weight than the evidence submitted by Englesby. It included testimony by relatively impartial witnesses, such as a medical doctor, a neighbor, a nephew and the two non-family witnesses to the will. We note also that no witness for either plaintiff or defendant disputed the fact that Anna was an independent and strong-willed individual.

We find no error as asserted by appellant in the trial court's failure to find a confidential relationship between Anna and her sons. A confidential relationship does not necessarily arise from the relationship of the parent and child, *Ellis v. Potter,* 455 P.2d 92 (Okl.App.1969), and the parent-child relationship is not sufficient in and of itself to raise a presumption of undue influence or establish undue influence. *In re Eggan's Estate,* 86 Idaho 328, 386 P.2d 563 (1963).

The judgment is affirmed. Costs to respondent.

McFADDEN, DONALDSON, BAKES, and BISTLINE, JJ., concur.