830 P.2d 1163

Shawn SMITH, Individually, and as Personal Representative of the Estate of Kenneth E. Smith, and Jesse Smith, a Minor, by and through his Guardian, Sharon Smith, Plaintiffs–Respondents,

v.

Kayla ANGELL, a Minor, and Gary S. and Sondra Angell, husband and wife, and parents of Kayla Angell, Defendants–Appellants.

No. 18674.

Supreme Court of Idaho,
Twin Falls, March 1991 Term.

March 26, 1992.

Rehearing Denied June 17, 1992.

Reed, McClure, Moceri, Thonn & Moriarty, Seattle, Wash., and Kenneth E. Lyon, Jr., Pocatello, for defendants-appellants. William R. Hickman and Kenneth E. Lyon, Jr., argued.

Jones, Christensen, Jorgensen, Robison, Holmes & Robison, Pocatello, for plaintiffs-respondents. Jesse C. Robison argued.

BAKES, Chief Justice.

Defendants Kayla Angell, a minor, and her parents, Gary and Sondra Angell, appeal from the judgment entered against them in this wrongful death action brought by the estate of the deceased, Kenneth E. Smith, and his two children, Shawn and Jesse Smith. Plaintiffs' cross appeal was voluntarily dismissed.

On July 8, 1988, at approximately 6:45 p.m., Kenneth E. Smith was driving his motorcycle south, along the inside lane (next to the center turn lane) of Yellowstone Avenue, a four-lane street, in Pocatello, Idaho. Fifteen-year old Kayla Angell, who was driving her parents' 1979 pick-up truck with their permission, was leaving a fast food restaurant located on the west side of Yellowstone Ave. Before exiting the restaurant parking lot and entering Yellowstone Ave. to proceed north, Angell looked to her left (north) and observed a Ford Bronco coming south in the outside lane. She did not see Smith's motorcycle behind the Bronco in the inside lane because her view of it was obstructed by the Bronco. She then looked to her right (south), and saw traffic proceeding toward her along the outside northbound lanes of Yellowstone Ave. After the Bronco passed, and without looking again to her left, she entered Yellowstone Ave. and collided with Smith's motorcycle. Smith died a very short time after as a result of massive trauma to his chest sustained in the collision. A passenger on Smith's motorcycle was injured.

On May 8, 1989, Smith's estate and children filed a complaint for wrongful death, alleging that Kayla Angell's negligence caused the collision. The defendants filed an answer on July 25, 1989, denying negligence and affirmatively alleging that Smith had been contributorily negligent. The plaintiffs filed a motion for partial summary judgment, seeking a ruling that Angell was negligent per se and that Smith had no comparative negligence. The trial court denied the motion, concluding that a genuine issue of fact existed regarding both Smith's and Angell's negligence. The case proceeded to trial on February 26, 1990.

At trial, the parties stipulated that Kenneth Smith was travelling below the speed limit of thirty-five miles per hour at the time of the collision and that the headlight of his motorcycle was turned on. They also stipulated that the Bannock Regional Medical Center toxicology reports concluded that Smith had not ingested alcohol or drugs the day of the collision.

The evidence was conflicting over whether Smith's motorcycle ran into the left front of the pickup or whether the pickup ran into the right front side of the motorcycle. Kayla Angell testified that she did not know exactly what happened because she did not see the motorcycle until after the collision occurred. The passenger riding with Smith on the motorcycle suffered injuries and could not even recall the accident. Both sides offered testimony of bystanders who were at the scene at the time of the accident and testimony of expert witnesses who presented theories of accident reconstruction and reaction times. The plaintiffs' expert testified that Angell ran into Smith, and, in his opinion, Smith had no opportunity to react to avoid Angell's vehicle. The defendants' expert testified that Smith ran into Angell and should have seen the truck in front of him and could have

avoided the accident if he had been paying attention.

The jury returned a verdict for the plaintiffs, finding Angell one hundred percent at fault and no comparative negligence on Smith's part. The jury awarded a total of $325,766 to the plaintiffs. The district court awarded prejudgment interest on $100,000 of the verdict[1] and additional interest on the total jury award from the date of the special verdict to the date of the final judgment. The court also awarded the plaintiffs costs and attorney fees equal to twenty-five percent of the total jury award. The district court based its award of attorney fees on its conclusion that the defendants' refusal "to settle this matter for policy limits was frivolous, unreasonable and without foundation as was the defense offered by defendants in this matter."

On appeal, defendants contend that the trial court erred in instructing the jury regarding presumptions, by awarding attorney fees to the plaintiffs, and by denying their motion for a new trial. They also argue that the amount of the jury's award was excessive.

First, defendants contend that the trial court erred by instructing the jury on the "dead man's presumption" in Instruction No. 23, which stated:

> The law presumes that Kenneth Smith, in his conduct at the time of and immediately preceding the accident, was exercising ordinary care. This presumption is a form of evidence and will support a finding in accord with the presumption unless the defendants introduce substantial evidence to the contrary.

Defendants point out that this instruction is contrary to our holding in *Bongiovi v. Jamison*, 110 Idaho 734, 718 P.2d 1172 (1986), and I.R.E. 301.

In *Bongiovi v. Jamison, supra,* this Court held that a jury may not be instructed on presumptions. Discussing the effect of I.R.E. 301,[2] which had been adopted only the year before, the Court in *Bongiovi* stated:

> This rule provides two major benefits. First, it standardizes the definition of the word presumption. *The rule merely requires the courts to instruct directly on those evidentiary objectives rather than referring to them as presumptions.* The rule simply means that when courts use the word presumption, and it is not otherwise defined by statute or the Rules of Evidence, then it shifts the burden of production.
>
> Second, *the rule effectively eliminates the word presumption from jury instructions.* Indeed, the comments to Rule 301 advise the courts not to mention presumptions to juries....
>
> A Rule 301 presumption relieves the party in whose favor the presumption operates from having to adduce further evidence of the presumed fact until the opponent introduces substantial evidence of the nonexistence of the fact.

110 Idaho at 738, 718 P.2d 1172 (emphasis added). The Court in *Bongiovi* held that it was reversible error to give an instruction similar to Instruction No. 23 in this case. Instruction No. 23 erroneously advised the jury that "the law *presumes*" the decedent was exercising due care. (Emphasis added.) The Court in *Bongiovi* specifically

---

1. Before trial, on March 1, 1989, plaintiffs offered to settle for $100,000, leaving the offer open until March 29, 1989. Defendants rejected the offer, and countered with an offer of $73,500. Defendants' offer, lower than the insurance policy limits, was rejected. Plaintiffs renewed their offer to settle for $100,000 on July 17, 1989, which was after a complaint was filed on their behalf in district court by their attorney. That offer was also rejected. The trial court awarded prejudgment interest on the $100,000 offer, based on the provisions of I.C. § 12–301, from July 17, 1989, the date of plaintiffs' final offer, to the date of final judgment.

2. I.R.E. 301 reads: **"Presumptions in general in civil actions and proceedings.**—In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast."

held that such an "instruction is unnecessary as well as improper" and explained that I.R.E. 301 "effectively eliminates the word presumption from jury instructions."

■ Furthermore, Instruction No. 23 stated that "[t]his presumption is a form of evidence." *Bongiovi* said that presumptions are *not* a form of evidence.[3] As the Court said in *Bongiovi*, I.R.E. 301 "merely requires the courts to instruct directly on those evidentiary objectives rather than referring to them as presumptions." *Bongiovi*, 110 Idaho at 738, 718 P.2d 1172. Finally, Instruction No. 23 instructed the jury that the defendants must introduce "substantial evidence" to overcome the presumption. This statement compounds the error, as a jury could easily infer that such a statement imposes a higher standard than that ordinarily imposed by law. Accordingly, the trial court erred in giving Instruction No. 23 to the jury.[4] *Bongiovi v. Jamison, supra* ("Where the evidence does conclusively establish a fact, the trial court should simply instruct the jury that that fact has been established—thus avoiding use of the word 'presumption.'" 110 Idaho at 739, 718 P.2d 1172.).

■ The trial court's error in instructing the jury on the dead man's presumption interfered with the jury's evaluation of the issue of Smith's possible comparative negligence. The law requires all drivers to keep a lookout for other vehicles. *Robinson v.*

*Westover*, 101 Idaho 766, 768, 620 P.2d 1096, 1098 (1980) ("Person operating motor vehicle has duty to keep proper lookout."); *Munson v. State, Dept. of Highways*, 96 Idaho 529, 530–531, 531 P.2d 1174, 1176–1177 (1975) ("[D]river of automobile is held to have notice of that which is plainly visible on highway before him."); *Drury v. Palmer*, 84 Idaho 558, 564, 375 P.2d 125, 128 (1962) ("It is not only the duty of the operator to look, but it is his duty to see and be cognizant of that which is plainly visible or obviously apparent, and a failure on his part in this regard, without proper justification or reason, makes him chargeable for failure to see what he should have seen had he been in the exercise of reasonable care.").

■ The question of whether Smith was comparatively negligent for failing to keep a proper lookout was a question of fact for the jury, as the trial court correctly noted in denying Smiths' motion for partial summary judgment. Whether Smith was keeping a proper lookout so as to see the pickup truck entering the highway in front of him was a question of fact for the jury. However, the jury, having been incorrectly instructed on the dead man's presumption, and being told that it was "a form of evidence" which may only be overcome by "substantial evidence to the contrary," may have based its decision on the presumption

---

**3.** The Court in *Bongiovi* stated:
> IDJI 213 instructs juries to weigh as evidence the presumption that an accident victim unable to testify at trial exercised due care immediately preceding the accident, except where the defendant proves the plaintiff's negligence. Under rule 301 the presumption would assign to the defendant the burden of producing evidence of the plaintiff's negligence. Since the defendant already has that burden *the instruction [IDJI 213] is unnecessary as well as improper.*

110 Idaho at 739, n. 3, 718 P.2d 1172 (emphasis added).

**4.** Even prior to I.R.E. 301 and *Bongiovi,* the rule was that the dead man's instruction should not be given where there is evidence regarding the circumstances of the accident. This Court, in *Dewey v. Keller,* 86 Idaho 506, 518, 388 P.2d 988, 1000 (1964), stated that:
> The principle of law outlined in such instruction is properly applied only where there are

no witnesses or external evidence to indicate *what the conduct of the decedent might have been immediately prior to his death.* Where the details of an accident are available through eye witnesses or other external evidence, the purpose of the presumption is served and the necessity for such instruction is removed. (Emphasis added.)

See also *Domingo v. Phillips,* 87 Idaho 55, 390 P.2d 297 (1964); *Mundy v. Johnson,* 84 Idaho 438, 373 P.2d 755 (1962).

In this case, the parties introduced detailed evidence of witnesses and other "external evidence" regarding the circumstances of the accident. Since such details were available, "the purpose of the presumption was served" and the instruction was not necessary. *Dewey, supra.* Thus, even before *Bongiovi,* the giving of Instruction 23 would have been error. However, after *Bongiovi,* there can be no question that giving Instruction 23 was reversible error.

rather than the facts in the case. A properly instructed jury may well have allocated some negligence to Smith based upon the circumstantial evidence that he "is held to have notice of that which is plainly visible on the highway before him." *Munson v. State Dept. of Highways, supra.* Therefore the giving of the "dead man's" instruction, in violation of our *Bongiovi* case and I.R.E. 301, was reversible error. *Bongiovi v. Jamison, supra.* The defendant is entitled to a new trial before a jury correctly instructed on the law which they should apply. *See, Fussell v. St. Clair,* 120 Idaho 591, 818 P.2d 295 (1991).

█ We also conclude that Instruction No. 28 was given in error, as it also impermissibly instructed the jury on the operation of a presumption. Instruction No. 28 stated:

> In determining what sum will fully and fairly compensate the plaintiffs for the loss of the care, society, love, comfort and companionship of Kenneth Smith, you are instructed that the plaintiffs need not demonstrate that such losses were of a particular monetary value, or for that matter, any dollar value whatsoever. Rather, under Idaho law, the general loss sustained by children for the death of their father *is presumed as a matter of law.* (Emphasis added.)

As was the case with Instruction No. 23, this instruction improperly instructed the jury that the damages suffered by Kenneth Smith's children as a result of his death "is presumed as a matter of law." *Bongiovi* specifically held that I.R.E. 301 "effectively eliminates the word presumption from jury instructions." Accordingly, the trial court erred in giving the damage Instruction No. 28. I.R.E. 301; *Bongiovi, supra.*

█ The defendants next argue that Instruction No. 22 improperly commented upon a fact issue to be determined by the jury. Instruction No. 22 provided that:

> A driver has the right to assume other drivers are exercising reasonable care on the highway by obeying the rules of the road.

This instruction, which uses the word "assume" rather than "presume," states that

people sharing the road and following the rules of the road may assume that other drivers will follow the same rules. However, IDJI 219 recommends "that no instruction to the effect that a person has a right to anticipate due care or obedience to the law on the part of others be given." While we do not consider the error in giving this instruction as grounds for reversal, on retrial the trial court should omit this particular instruction.

Finally, the Defendants object to the duplicative nature of parts of Instruction Nos. 26, 28, and 29. We have already ruled above that Instruction No. 28 was given in error. Instruction No. 29 read:

> In determining what sum of money will fully and fairly compensate the Plaintiffs for the loss of the care, society, love, comfort and companionship of Kenneth Smith, you should consider the nature, depth, extent and quality of the relationship between the Plaintiffs and Kenneth Smith, as shown by the evidence.

Instruction No. 26 instructed the jury of "the loss of services, protection, training, aid, comfort and loss of society of Kenneth Smith." While we find no error resulting from the fact that parts of some of the damage instructions were repeated in other instructions, duplicative instructions should ordinarily be avoided.

█ Finally, because we are reversing the judgment and remanding this case for a new trial, we address the issue of attorney fees which may come up again on retrial. The district court based its award of attorney fees on its conclusion that the defendants' refusal "to settle this matter for policy limits was frivolous, unreasonable and without foundation as was the defense offered by defendants in this matter." A trial court's consideration of failed settlement negotiations or of a refusal to negotiate a settlement when deciding whether to award attorney fees is prohibited under Idaho law. In *Anderson v. Anderson, Kaufman, et. al.,* 116 Idaho 359, 775 P.2d 1201 (1989), this court unanimously held that "the failure to enter into or conduct settlement negotiations is not a basis for awarding attorney fees under I.C. § 12–121

and I.R.C.P. 54(e)(1)." 116 Idaho at 366. *See also, Ross v. Coleman,* 114 Idaho 817, 761 P.2d 1169 (1988); *Payne v. Foley,* 102 Idaho 760, 639 P.2d 1126 (1982).

Furthermore, this Court has held that if a case includes any triable issues, an award of attorney fees under I.C. § 12–121 is not appropriate. In *Payne v. Foley, supra,* this court reversed an attorney fee award under I.C. § 12–121 and I.R.C.P. 54(e) because, even though liability was not "seriously contested," the question of the amount of damages was legitimately raised and tried. *See also, Magic Valley Radiology Associates, P.A. v. Professional Business Services, Inc.,* 119 Idaho 558, 563, 808 P.2d 1303, 1308 (1991) ("The total defense of a party's proceedings must be unreasonable or frivolous" before an award of attorney fees is appropriate under I.C. § 12–121 and I.R.C.P. 54(e)(1)); *Turner v. Willis,* 119 Idaho 1023, 1025, 812 P.2d 737, 739 (1991) ("[T]he 'total defense' of this case was not unreasonable or frivolous, and accordingly, pursuant to our holding in *Magic Valley Radiology,* the trial court erred in awarding attorney fees pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1).")

In this case, as in *Payne, Magic Valley Radiology,* and *Turner,* the question of Smith's negligence, and amount of the Smiths' damages were clearly legitimate, triable issues. Thus, the "total defense" was not frivolously pursued, and the trial court erred in awarding attorney fees pursuant to I.C. § 12–121 and I.R.C.P. 54(e)(1).

The judgment of the trial court is reversed and the case is remanded for a new trial. Costs to appellant. No attorney fees allowed.

JOHNSON, BOYLE and McDEVITT, JJ., concur.

BOYLE, Justice, specially concurring.

I fully concur in our holding that Instructions 23 and 28 constituted reversible error, however, I write specially to note my concern that today's decision not be misunderstood as suggesting that the mere use of the word "presumption" is cause for reversal. While I recognize that language in *Bongiovi v. Jamison,* 110 Idaho 734, 718 P.2d 1172 (1986), can fairly be read as requiring this result, in my view a finding of prejudice based upon the specific circumstances of the case is required before reversal is warranted.

BISTLINE, Justice, dissenting.

Justice Boyle's succinct opinion, although generally concurring with the views expressed by the Chief Justice, serves to show his·concern that the majority opinion is conveying to the bench and bar the message that presumptions are "out" and *Bongiovi* is "in." It is much feared that what the Court is doing to Idaho jurisprudence does not bode well for the people of Idaho. An after-the-fact assessment of the situation can do little toward undoing what has been done, therefore making it all the more imperative that the alarm be spread now in order that the entire citizenry can be heard on an issue of greatest importance.[5] It is to be remembered that dissent is a part of

---

5. Having so stated, it seems that I have heard that song before. Similarly to the situation here, *Volk v. Baldazo,* 103 Idaho 570, 651 P.2d 11 (1982), was a four-to-one decision of this Court authored by Justice Shepard. Chief Justice Bakes was in dissent and sounded the alarm far more emphatically than I do today, striking out at the Court's opinion in that case, and.for good measure tossing into the bargain a 1975 decision:

This Court may be, unwittingly, opening another Pandora's box similar to that wrought by our *Rogers v. Yellowstone Park Company* case, 97 Idaho 14, 539 P.2d 566 (1975). In that case this Court abolished the defense of spousal immunity. By today's decision, when combined with the *Rogers* decision, the hus-

band can not only sue the defendant Baldazo for the alleged wrongful death of his unborn child, but he may also sue his own wife if she was also negligent in the accident which resulted in her miscarriage. The defendants assert that the accident was caused solely by Mrs. Volk's negligence.

Today's decision opens the door for suits by the husband against the wife when she negligently causes herself to miscarry, whether in an automobile wreck or otherwise. In fact, it may very well authorize a husband to sue his own wife if she submits to an abortion.

Today's decision may seem like a small step, but, like Pandora's box once opened, it is difficult to envision all of the mischief which may ultimately emerge.

the American way, although to exercise it on the appellate court level ordinarily occurs only when a Justice's sense of outrage overcomes his sense of inertia,[6] to which I add my own view that there is no place in the appellate tiers of the judicial system for "dissenting without opinion." There were many of such dissents in my early years of service, but few come to mind in the past two or three years. Clearly, if a member of this Court finds himself unable to join an opinion which has been proffered, a non-speaking dissent does not suggest in the least where the author is thought to have erred. Accordingly, the bench, the bar, the legal scholars, and the litigants are deprived of knowing wherein the silently dissenting member sees a problem. Moreover, the author and his majority have no reason to write further.

To the contrary, where views do differ, and are expressed and responded to, the system functions as it should. The Supreme Court of the United States presents a good example of a court which performs its function in a commendable manner, where readers gain insight from the benefit of a majority opinion, dissenting opinions, and ordinarily footnote responses thereto which are worked into the majority opinion. Having indulged in these comments, it is in order to return to this particular case where obviously any sense of inertia has been sufficiently overcome that I take pen in hand.

As noted above, Justice Boyle has expressed his concern with what may become the demise of presumptions by the majority's intertwining of *Bongiovi* with rules of evidence. It is to be kept in mind that we have had presumptions with us since before statehood. Rules of evidence, however, apparently were one attorney's lifetime objective, just in the past ten years, and were adopted by a majority vote of this Court just a short year ago.

Prior to the Court's adoption of the rules of evidence, attorneys and judges were

guided by I.C. tit. 9, § 101–1702. Surviving statutory presumptions appear to be found in I.C. § 5–211 and I.C. § 7–1119. Today our concern is with presumptions as they had heretofore existed, and as with Justice Boyle, my concern is the majority's unexplained goal of striking down the presumptions which were born primarily of case law precedent set by able justices who *were elected* to the Supreme Court pursuant to the Idaho Constitution which was ratified by the people of Idaho in November 1889, and approved by an act of Congress on July 3, 1890. As to presumptions in civil actions, I.R.E. 301 states in essence exactly that which Justice Donaldson and I stated in the year 1980, five years before the Court adopted Rule 301:

BISTLINE, Justice, specially concurring:

Once again the validity of *McNabb v. Brewster,* 75 Idaho 313, 272 P.2d 298 (1954), is questioned by the Court. In order to properly understand *McNabb*, it is only necessary to observe the distinctions between the terms 'burden of proof,' 'burden of persuasion,' and 'burden of producing evidence.'

The term 'burden of proof' subsumes the two distinct procedural problems of 'burden of persuasion' and 'burden of producing evidence.' *Cole–Collister Fire Protection District v. City of Boise,* 93 Idaho 558, 569, 468 P.2d 290, 301 (1970); *Harman v. Northwestern Mutual Life Insurance Co.,* 91 Idaho 719, 721, 429 P.2d 849, 851 (1967); G. Bell, Handbook of Evidence for the Idaho Lawyer 215 (2d ed. 1972); McCormick on Evidence § 336 (2d ed. 1982); Thayer, The Burden of Proof, 4 Harv.L.Rev. 45 (1890). As stated in one text:

'In its strict sense, the term [burden of proof] denotes the duty of establishing the truth of a given proposition or issue by such a quantum of evidence as the law demands in the case in which the issue arises, whether civil or criminal. In a secondary sense the term "burden of proof" is used to designate

---

*Volk v. Baldazo,* 103 Idaho at 577, 651 P.2d at 18.

6. Per Shepard, J., dissenting in *Deshazer v. Tompkins,* 93 Idaho 267, 272, 460 P.2d 402, 407 (1969).

the obligation resting upon a part to meet with evidence a prima facie case created against him—that is, the duty of proceeding with evidence at the beginning, or at any subsequent stage, of the trial in order to make or meet a prima facie case. The burden of proof in this secondary sense means, in short, the necessity of going forward with the evidence, and it is sometimes expressed by the term "burden of evidence." ' (Footnotes omitted.) 29 Am. Jur. *Evidence* § 123 (1967).

Thus, although the term 'burden of proof' can be used interchangeably with the other two terms because it incorporates them both, such use often leads to confusion. As noted by one commentator, '[w]hile the bulk of the decisions in Idaho treat the two burdens as one and fail to make the differentiation ...` [i]t would seem that a careful demarcation between the two burdens would make the Idaho decisions of greater value as guides to the lower courts.' *Bell, supra* at 216–17. Although this Court has made the distinction in the past, *e.g., Cole–Collister Fire Protection District v. City of Boise*, 93 Idaho 558, 569, 468 P.2d 290, 301 (1970); *Harman v. Northwestern Mutual Life Insurance Co.*, 91 Idaho 719, 721, 429 P.2d 849, 851 (1967), a reading of *McNabb* and the authorities relied on there shows that the Court in *McNabb failed to specifically make the distinction between the burden of producing evidence and the burden of persuasion.*

*In McNabb* the Court quoted in apparent approval the Supreme Court of California in *Sparks v. Mendoza*, 83 Cal. App.2d 511, 189 P.2d 43 (1948), for the proposition that a parent-child proposition that an inter vivos gift from the parent to the child is fraudulent, *'shifting the burden of proof to the grantee to show fairness and good faith in the transaction....'* (Emphasis added.) 75 Idaho at 320, 272 P.2d at 302, quoting 189 P.2d at 45.

The California court in *Sparks* relied on, among other cases, *Johnson v. Clark*, 7 Cal.2d 529, 61 P.2d 767 (1936), as authority for the statement quoted in *McNabb that it is the burden of proof which shifts. The court in Johnson* made the following statements: 'the burden is cast upon the part who has gained the advantage to *show* fairness and good faith in all respects.... The burden is cast upon defendant to allege *and prove* the fairness of the transaction.' (Emphasis added.) 61 P.2d at 769–70. The other cases relied on by the court in *Sparks* held that it was the burden of producing evidence which shifted. In fact, in *Sparks* itself the court went on in a later paragraph to note that upon the arising of the presumption of fraud and undue influence, '[t]he burden was therefore cast upon plaintiff *to show* that the transaction was free from fraud and undue influence, and in all particulars fair.' (Emphasis added.) 189 P.2d at 45.

It becomes apparent that the California courts in cases relied on by *McNabb* were interchangeably using 'burden of proof' and 'burden of producing evidence,' but in so doing they were aware that they were not shifting the burden of persuasion. Although the Court in *McNabb did not discuss this matter, it did quote Campbell v. Genshlea*, 180 Cal. 213, 180 P. 336 (1919), for the proposition that where a parent-child relationship exists, 'a strong presumption of confidential relation arises which *would place upon the beneficiary in the transaction the burden of showing fairness in dealing....*' (Emphasis added.) 75 Idaho at 320, 272 P.2d at 302, quoting 180 P. at 341. Properly understood, the California court's view of the legal effect of the presumption involved is compatible with our recent holding in *Gmeiner v. Yacte*, 100 Idaho 1, 8, 592 P.2d 57, 64 (1979), and, although the distinction was not specifically set forth in *McNabb*, *McNabb* should henceforth be read as standing for the proposition that it is the burden of going forward sufficiently to dispel the presumption which shifts—not the burden of persuasion.

Ordinarily the distinction between the burden of proof and the burden of going

forward ought not to be troubling. Where a fiduciary relationship is established, it behooves the allegedly fraudulent grantee to put on enough of a case to dispel any presumption. The burden of proof (more aptly, the burden of persuasion) remains on the party alleging the fraud, but in most cases both parties will have produced evidence and burden of proof (burden of persuasion) comes into play only when the evidence is in equipoise. *See generally Cole–Collister Fire Protection District v. City of Boise,* 93 Idaho 558, 563–64, 468 P.2d 290, 295–96, 301 (1970).

DONALDSON, J., concurs.

*Keenan v. Brooks,* 100 Idaho 823, 827–28, 606 P.2d 473, 477–78 (1980) (emphasis in original).

Simmered down to an essence, it is beyond dispute that *Keenan,* in illustrating how the Court went astray in *McNabb* was the failure to recognize the two distinct burdens which came into play where presumptions are concerned, namely *the burden of proof, i.e.,* the burden of producing evidence and the burden of persuasion. The plaintiff is the party who always must carry the burden of persuasion. As the plaintiff opens his or her case, only enough evidence must be shown to shift the burden of production to the defendant.

The Rule 301, promulgated by a Court committee, said exactly the same as stated in *Keenan* by Justices Donaldson and Bistline, with one slight distinction, albeit a distinction without a difference. Rule 301 in speaking of the shifting of the burden of proof, a presumption, meaning all of the presumptions which came from the common law plus those attributable to the legislature, does so in terms *not shifting the burden of proof in the sense of nonpersuasion, which remains upon the party on whom it was originally cast.* Having always understood that the purpose, or at the least the effect, of a presumption was to cast to the defendant the burden of coming forward with his evidence which might rebut, meet, and to which I add, overwhelm or scuttle the presumption, it is seen that the distinguishing feature of

Rule 301 is the language "in the sense of the risk of non-persuasion." In my book that is a "risk" in any civil action. The plaintiff either has a winning case, or he does not.

Thereafter in the ill-starred *Bongiovi* case, having concurred only in the result, *i.e.,* the reversal of the trial court judgment, *Keenan v. Brooks* was revisited to ascertain whether there was any need for a *Bongiovi* dissertation relative to presumptions, and the effect thereof, upon which I also commented at the same time:

BISTLINE, Justice, concurring in the reversal of the judgment below and the remand for further proceedings.

When we heard oral argument in this case I thought, 'What a pity that not one other member of the Court utilized the opportunity to correct the law as Chief Justice Donaldson and myself undertook to do in the specially concurring opinion in *Keenan v. Brooks,* 100 Idaho 823, 606 P.2d 473 (1980).' Had one other justice taken the time to verify the mishappenstance of *McNabb v. Brewster,* 75 Idaho 313, 272 P.2d 298 (1954), the law would have been straightened out over six years ago.

At an early time after my appearance on the Court rather than before it, in *Englesby v. Nisula,* 99 Idaho 21, 576 P.2d 1055 (1978), I sensed that Justice Shepard had never been enchanted by the *McNabb* case:

However, *McNabb* was strongly criticized in *Kelley v. Wheyland,* 93 Idaho 735, 471 P.2d 590 (1970), and it was suggested that the *McNabb* ruling governing a shift of the burden of proof to the grantee only had validity under circumstances similar to those of *McNabb. Id.* [99 Idaho] at 23, 576 P.2d at 1057.

My thirst whetted, I turned to the *Kelley* opinion which Justice Shepard had also authored:

We point out initially that the case of *McNabb v. Brewster,* supra, is almost unique in Idaho jurisprudence for several reasons. First, there is no actual agreement of a majority of the

court on disposition of the case, and secondly, *we do not believe that the portion of Brewster relied upon by appellant herein was either necessary or appropriate to the decision in Brewster.* In *Brewster* an elderly couple was infirm, senile, unable to care for themselves, and could neither read nor write. All of the property of the elderly couple was deeded to a daughter because she otherwise refused to care for them. The deed was conditioned upon here obligation to care for her parents for the remainder of their lives. The opinion of the court in *Brewster* stated at 75 Idaho 317, 272 P.2d at 300:

> 'The evidence is sufficient to justify cancellation of the deed on the ground of Mrs. Brewster's neglect and refusal to care for the decedents [her parents].'

The court then, however, proceeded to discuss a rule indicating that the existence of a fiduciary relationship between the grantor and grantee, coupled with a lack of consideration for the conveyance, placed upon the grantee the burden of establishing that the transaction was fair, just and free from any taint of fraud or undue influence. *Kelley, supra,* 93 Idaho at 737–38, 471 P.2d at 592–93.

In authoring the Court's opinion in *Keenan,* Justice Shepard again voiced dissatisfaction with *McNabb,* but reached the decision that the judgment below could be affirmed on the law of *Gmeiner v. Yacte,* 100 Idaho 1, 592 P.2d 57, 63 (1979), that:

> a close scrutiny of the entire record and an analysis of the result of the execution of the gift deed supports the findings and conclusions of the trial court that the evidence did not give rise to a presumption of undue influence. *Keenan, supra,* 100 Idaho at 826, 606 P.2d at 476.

It seemed to me that if *McNabb* was as inherently unreliable, as Justice Shepard wrote whenever the occasions arose, and with strong recollection of that which Justice Donaldson had writ-

ten for the Court in *Cole–Collister Fire Protection District v. City of Boise,* 93 Idaho 558, 468 P.2d 290 (1970), then *McNabb* should be revisited, which was not a monumental effort. I explained in my *Keenan* opinion that *McNabb's fault was only in having applied California case law which was guilty of 'interchangeably using "burden of proof" and "burden of producing evidence,"* but in so doing they were aware that they were not shifting the burden of persuasion. . . .' and concluded that '*McNabb* should henceforth be read as standing for the proposition that *it is the burden of going forward sufficiently to dispel the presumption which shifts—* not the burden of persuasion.' *Keenan, supra,* 100 Idaho at 828, 606 P.2d at 478.

Obviously, Justice Huntley would have joined that opinion. His today's opinion primarily is based on the same authority, and it is a shame that he was not aboard the Court at an earlier date. Three votes six years ago would have narrowed *McNabb* to its proper confines, which Justice Shepard was clearly in favor of doing, but did not vote for when the opportunity was there.

*Bongiovi v. Jamison,* 110 Idaho 734, 739–40, 718 P.2d 1172, 1177–78 (1986).

Justice Huntley correctly observed the function of a presumption, mainly the shifting of the burden of production. *Id.* at 738, 718 P.2d at 176. This had been previously explained in the Bistline, J., *Keenan* opinion (Donaldson, J. concurring), written five years earlier. Justice Huntley should not be overly faulted for not being aware of the views in *Keenan* which differed from the opinion of Justice Shepard, all of which took place long before he was on the Court. Any fault laid to Justice Huntley can only be attributed to his over-expansive statement after he had written correctly regarding the undue influence case which was before him, "This is how the presumptions should function in undue influence cases, *as well as other civil cases in which presumptions are utilized."* Far better

for Idaho jurisprudence that he had not added those wholly gratuitous eleven words. Obiter dicta and dictum are well-defined in Black's Law Dictionary:

> **Dictum.** A statement, remark, or observation. *Gratis dictum;* a gratuitous or voluntary representation; one which a party is not bound to make. *Simplex dictum;* a mere assertion; an assertion without proof.
>
> The word is generally used as an abbreviated form of *obiter dictum,* 'a remark by the way;' that is, an observation or remark made by a judge in pronouncing an opinion upon a cause, concerning some rule, principle, or application of law, or the solution of a question suggested by the case at bar, but not necessarily involved in the case or essential to its determination; any statement of the law enunciated by the court merely by way of illustration, argument, analogy, or suggestion. Statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case in hand or obiter dicta, and lack the force of an adjudication. *Wheeler v. Wheeler,* 98 Colo. 568, 58 P.2d 1223, 1226 [1936]. *Dicta* are opinions of a judge which do not embody the resolution or determination of the court, and made without argument, or full consideration of the point, are not the professed deliberate determinations of the judge himself.
>
> In old English law, *Dictum* meant an arbitrament, or the award of arbitrators.
>
> In French law, the report of a judgment made by one of the judges who has given it.

Black's Law Dictionary 454 (6th ed. 1990).

The problem encountered in this instant *Smith v. Angell* case has much to do with Justice Huntley's overly broad dictum as to all presumptions. He was dealing with only one of the many presumptions which may be encountered, that of undue influence. There is little doubting that if we could properly hear from him, he would be the first to regret the mistake made by throwing gratuitous dictum into an otherwise well written and well reasoned opinion.

Today it is readily seen that the Chief Justice has seized onto that dictum as the cornerstone of his opinion. As a prime example, the majority conclusion that the jury instruction on the presumption of due care, Instruction 23, resulted in reversible error is not sustainable as a matter of law. In particular, reference is made to his holding that the validity and usefulness of the presumption of due care (that which Chief Justice Bakes refers to as the dead man's presumption)[7] has been exterminated by *Bongiovi v. Jamison,* goes far afield and is completely erroneous. Although *Bongiovi* purported to construe I.R.E. 301, the facts of that case were such as to involve a *presumption of undue influence by a beneficiary upon a grantor* and such a broad reading of *Bongiovi* is not warranted. A presumption of undue influence operates differently than a presumption of due care. A presumption of due care's function is and always has been to "fill in" a gap caused by a total lack of plaintiff's evidence that a decedent may present on his or her behalf. On the other hand, a presumption of undue influence arises only after the plaintiff has introduced sufficient evidence to show a confidential relationship between the grantor as well as grantee participation in procuring the gift.

For well over twelve years, and certainly long before *Bongiovi,* it has been understood that the effect of presumptions is to shift the burden of *production* rather than the burden of *persuasion.* I.R.E. 301; *Keenan v. Brooks,* 100 Idaho 823, 606 P.2d 473 (1980) (specially concurring, Donaldson and Bistline, JJ.). Where a trial court sees that it is appropriate in a case to instruct the jury regarding an established presumption, it is well established that so doing does not result in a shifting of the ultimate

---

7. This presumption also is invoked if a person has not been fatally injured but is unable to testify due to loss of memory, *Haman v. Prudential Ins. Co. of America,* 91 Idaho 19, 415 P.2d 305 (1966). Therefore, "presumption of due care" more accurately portrays the identity of what has been, in many instances, referred to as the "dead man's" statute.

burden of persuasion. Instead, it simply will inform the jury of the existence of the presumption and allow the jurors to give it due consideration in their resolution of the case.

Presumptions are the product of policy, and the policy considerations in favor of a presumption often persist despite the introduction of evidence rebutting the presumed fact. *McCormick on Evidence* § 344 (3d ed.).[8] When the basic facts giving rise to a presumption do not create an inference that is naturally sufficient to make an impact on the jury, these policy rationales may be completely frustrated by not informing the jury of the existence of the presumption. This problem arises in the context of a decedent's due care presumption. *Contrary to the undue influence presumption*, which arises from *known facts*, a decedent's due care presumption was born out of the *lack of any evidence* which substantially explains the cause of an accident. The factors giving rise to the due care presumption are merely that a person has been killed in an accident, and insufficient evidence exists to establish the cause of the accident.

If the due care presumption is treated identically to the undue influence presumption which was applied in *Bongiovi*, then when a defendant introduces substantial evidence of a decedent's negligence, the presumption would dissipate. At that point, the jury is left to weigh the evidence introduced by the defendant regarding the decedent's negligence against the basic underlying facts which initially brought about the invocation of the presumption, which was a *lack of evidence* about what caused

the fatality, as was the circumstance in *Haman.*

Essentially, in a wrongful death case such as is involved here, *i.e.*, a collision involving two vehicles, where the driver of one, Kenneth Smith, perished, and the passenger riding with him is unable to recall the event, no one is able to present any of the underlying "facts" and circumstances to the jury. Hence the plaintiffs in seeking damages for Mr. Smith's death, come before the court and jury faced with an evidentiary void. Over the years case law precedent has developed which fills that void. On the other hand, in an undue influence case, the jury will receive and consider evidence presented by *both* parties. Consequently, in order to effectuate the philosophy and purpose of the due care presumption, some instruction to the jury is necessary. Unless so informed by the court, the jury ordinarily will not be aware of the existence or objective of the presumption. A jury which is not fully informed as to the presumption will be functioning in a vacuum with only evidence presented by the party opposing the presumption.

The optimum manner of handling presumptions of due care was stated in an opinion issued by this Court in 1966, in *Haman:*

> In *Dept. of Finance v. Union Pacific R.R. Co.*, 61 Idaho 484, 104 P.2d 1110 (1940), it was held that if reasonable minds might differ as to the conclusions to be drawn from the evidence opposing the presumption, the matter should be submitted to the jury, and the jury informed as to the presumption, quoting from *Geist v. Moore, supra,* as follows:

---

**8.** The presumption that a decedent was exercising due care at the time of an accident causing his or her death is undoubtedly the most entrenched and well-established presumption in Idaho case law. *See Smith v. Praegitzer,* 113 Idaho 887, 749 P.2d 1012 (Ct.App.1988); *Owen v. Burcham,* 100 Idaho 441, 599 P.2d 1012 (1979); *Goodfellow v. Coggburn,* 98 Idaho 202, 560 P.2d 873 (1977); *Bradbury v. Voge,* 93 Idaho 360, 461 P.2d 255 (1969); *Petersen v. Parry,* 92 Idaho 647, 448 P.2d 653 (1968); *Domingo v. Phillips,* 87 Idaho 55, 390 P.2d 297 (1964); *Dewey v. Keller,* 86 Idaho 506, 388 P.2d 988 (1964); *Drury v. Palmer,* 84 Idaho 558, 375 P.2d 125 (1962); *Mundy v. Johnson,* 84 Idaho 438, 373

P.2d 755 (1962); *Van v. Union Pacific Railroad Co.,* 83 Idaho 539, 366 P.2d 837 (1962); *Lallatin v. Terry,* 81 Idaho 238, 340 P.2d 112 (1959); *Graham v. Milsap,* 77 Idaho 179, 290 P.2d 744 (1955); *Larsen v. Jerome Cooperative Creamery,* 76 Idaho 439, 283 P.2d 1096 (1955); *Geist v. Moore,* 58 Idaho 149, 70 P.2d 403 (1937); *Fleenor v. Oregon Short Line R.R. Co.,* 16 Idaho 781, 102 P. 897 (1909). This particular presumption "is justified by the natural instinct of self preservation and the disposition of mankind to avoid injury and personal harm." *Domingo v. Phillips, supra; see also Texas & P. Ry. Co. v. Gentry,* 163 U.S. 353 (1896).

'... and in the following cases this court had definitely committed itself to the doctrine that where there is a conflict between the presumption and contrary evidence, from which reasonable minds might draw different conclusions, it is proper to instruct the jury as to the presumptions. (citing cases.)' *Haman v. Prudential Ins. Co. of America,* 91 Idaho at 25, 415 P.2d at 311. This reasoning recognizes the potential for a situation where insufficient evidence has been introduced to conclusively establish a fact, yet some evidence has been introduced which, if not counterbalanced by the due care presumption, would result in unfairness to the plaintiff who has no evidence to introduce in favor of the decedent.

I also disagree that the giving of Instruction 28 was reversible error. I am in complete agreement with the view of Justice Boyle, expressed in his specially concurring opinion, that "a finding of prejudice based upon the specific circumstances of the case is required before reversal is warranted," and believe no prejudice exists here.

For the above reasons, this case should not be reversed and remanded for a new trial.