718 P.2d 1172

Mary BONGIOVI, Plaintiff-Respondent,

v.

S.M. JAMISON, Sr., and Neita Jamison, husband and wife, and Larry L. Jamison, Defendants-Appellants.

No. 15744.

Supreme Court of Idaho.

March 19, 1986.

Rehearing Denied May 19, 1986.

Charles W. Hosack, Coeur d'Alene, for defendants-appellants.

Terrence W. Hannon, Janet E. Jenkins, Coeur d'Alene, and Dock Blanchard, Ocala, Fla., for plaintiff-respondent.

HUNTLEY, Justice.

On June 11, 1981, George Vittoria deeded one hundred ten acres of timber land (Blue Creek property) to Larry Jamison in exchange for Jamison's five year, $30,000 unsecured note. Vittoria also by related will bequeathed the remainder of his estate (a few thousand dollars in cash and jewelry) to Jamison. This happened nine days after Vittoria learned he had a recurrence of cancer, which cancer had been diagnosed in 1979 as having a 65% likelihood of being terminal, and which had required a colostomy in that same year. In light of the recurrence, Vittoria submitted to chemotherapy which began June 17, 1981. He died August 25, 1981, at age 64.

This action, by Mary Bongiovi, the adoptive step-mother of Vittoria, resulted in a jury verdict setting aside the transfer as having been procured through the undue influence of the Jamisons on Vittoria. The Jamisons appeal from the verdict and the denial of post-trial motions.

Vittoria purchased the Blue Creek property in the mid 1950's. He lived alone there until his death. For twenty years he worked for Y–J's, a food company owned by the Jamisons, until 1975, when he either retired or was laid off and not rehired. From 1975 until his death he visited the Jamisons and former co-workers at Y–J's about two days a week and certain neighbors three days a week. During the same period, he received one visit and occasional cards and phone calls from his mother. Mrs. Bongiovi's health limited her ability to travel from her Florida home to visit Vittoria in person. During the last year of his life, Vittoria believed his mother was financially well off.

On June 11, 1981, the parents of Larry Jamison brought Vittoria to attorney Herbert Sanderson, who drafted Vittoria's will and deed. At the time, Sanderson sat on Y–J's board of directors and had represented the Jamisons in prior matters. He also represented the Jamisons in the original defense of this law suit.

The Jamisons had met alone with Sanderson two days before bringing in Vittoria, who apparently executed the deed and will during his first meeting with Sanderson. Sanderson had never previously represented Vittoria. The Jamisons were always present when Vittoria met with Sanderson. Sanderson testified Vittoria was definite that he wanted Larry Jamison to get all Vittoria's property. Sanderson testified at trial that when he drafted the papers he was under the impression that the property was valued at $30,000 according to the latest Kootenai County assessor's state-

ment of the market value. However, other evidence placed the value at $200,000. The Jamisons' contacts with Vittoria increased greatly during the final three to four months of Vittoria's life, according to S.M. Jamison, Sr.

For example, on July 29, 1981, Vittoria gave a ring to Neita Jamison for her birthday. Yet, some testimony indicated the Jamisons did not ordinarily celebrate birthdays with Vittoria.

The jury found the Jamisons exercised undue influence over Vittoria with respect to the deed, will, and gift. The Jamisons argue on appeal that the district court erred in instructing the jury on a presumption of undue influence. Instruction 9 defined undue influence. Instruction 13 stated a presumption of undue influence would arise upon the jury's finding of a confidential relationship between the testator/grantor and the beneficiary, coupled with participation by the beneficiary in the procurement of the conveyances. Instruction 20 directed the jury to weigh the presumption as evidence and gave the Jamisons the burden of rebutting the presumption. The full text of each instruction appears below.[1]

The Jamisons focus on Instruction 13, which they claim contradicted the rule in *Keenan v. Brooks*, 100 Idaho 823, 606 P.2d 473 (1980). Bongiovi responds that *McNabb v. Brewster*, 75 Idaho 313, 272 P.2d 298 (1954), permitted the instruction.

*McNabb* held that if a grantor and grantee have a confidential relationship, and the grantor reposes trust in the grantee, and the evidence otherwise creates an inference of fraud or overreaching, then the burden of persuasion shifts to the proponent (beneficiary) of the conveyance to show by clear and convincing evidence that no undue influence was exercised. *McNabb*, 75 Idaho at 320–23, 272 P.2d at 302–04. *McNabb* involved a mother-daughter confidential relationship. Evidence suggested the daughter dominated her mother through verbal abuse. The daughter breached her promise to care for her mother, which promise had been made in exchange for the mother's property. This breach created an inference of fraud. The daughter also participated in the procurement of the conveyance, creating an inference of overreaching. *McNabb*, 75 Idaho at 316, 319–20, 272 P.2d at 299, 301–02. Bongiovi concludes that the holding and facts of *McNabb* permitted the district court's Instruction 13 on a presumption of undue

---

**1.** **INSTRUCTION NO. 9**

The plaintiff Bongiovi has the burden of proving that at the time the decedent, George Vittoria, signed the Will and executed the deed on June 11, 1981, he was unduly influenced by S.M. Jamison, Sr., and Neita Jamison and Larry L. Jamison in that he was so dominated, by whatever means, by those persons that under all the circumstances he could not well resist but that his free will was controlled and the will of the others was substituted for the free will of George Vittoria to induce the signing of his Will. The plaintiff also has the burden of proving that on July 29, 1981, when George Vittoria gave a ring to Neita Jamison, he was so dominated by her that under all the circumstances he could not well resist but that his free will was controlled and the will of Neita Jamison substituted for his to induce him to make the gift.

**INSTUCTION NO. 13**

A presumption of undue influence arises from proof of the exercise of a confidential relationship between a testator, a grantor in a deed or a donor of a gift and such a beneficiary coupled with activity on the part of the latter in preparation of the Will, the deed, or the gift. The

confidential relation alone is not sufficient. There must be activity on the part of the beneficiary, or some person acting for the benefit of the beneficiary, in the matter of the preparation of the Will or making of the deed or gift.

**INSTRUCTION NO. 20**

A presumption of undue influence is rebutted by production of sufficient evidence. It is not necessary for the defendants to overcome a presumption by a preponderance of the evidence. A presumption of undue influence may be overcome by a showing of any of the following: that no pressure was exercised; that the Will, deed or gift was well understood by the testator, grantor or donor; that its execution was a free and voluntary act; that it was such that a person of average mind, morals and love for family might be supposed willingly to make; or that the favored beneficiary did not abuse or betray the confidence reposed in him. The strength of a presumption of undue influence in reference to the proof required to overcome it depends upon the particular facts and circumstances of each case.

influence which justified permitting the jury to weigh the presumption as evidence as provided by Instruction 20.

The Jamisons argue Instruction 13 contradicted *Keenan,* a case decided after *McNabb.* In *Keenan,* a mother conveyed her property to her daughters for whom she apparently had affection. In *Keenan,* the existence of a confidential relationship was assumed since the grantor received no independent advice regarding the conveyance and the beneficiary participated in the procurement of the conveyance. This Court nevertheless held no presumption of undue influence arose. *Keenan,* 100 Idaho at 826, 606 P.2d at 476.

*Keenan* distinguished *McNabb* on three factual grounds. In *McNabb,* the conveyance left the grantor impoverished, it disinherited one of two children, and the beneficiary breached her promise to care for the grantor, a promise made to induce the conveyance. *Keenan,* 100 Idaho at 826, 609 P.2d at 476. Therefore, *Keenan* did not prohibit the use of presumptions of undue influence, but merely restricted their use to cases factually similar to *McNabb.*

Another Idaho case which refused to invoke a presumption also distinguished *McNabb.* There it was noted the grantor in *McNabb* disliked the grantee and did not receive independent advice in preparing the conveyance. *Kelley v. Wheyland,* 93 Idaho 735, 738–39, 471 P.2d 590, 593–94 (1970).

In the instant case, the evidence indicated the conveyances did not impoverish George Vittoria during his life. Neither did it appear that fraudulent promises by the Jamisons induced the conveyances. On the other hand, Vittoria disinherited his adoptive step-mother even though on June 7, 1981, ten days prior to commencing chemotherapy, he said to a neighbor that his step-mother would get all his property upon his death. Vittoria received no independent advice on the conveyance. The record also suggests Vittoria got along with the Jamisons. In short, this case seems to fall somewhere between *McNabb* and *Keenan/Kelley.*

Even if this case were factually similar to *McNabb,* we question the wisdom of instructing juries on presumptions. By restricting the use of presumptions to cases factually similar to *McNabb,* both *Keenan* and *Kelley* have virtually defeated the purpose of presumption as espoused by *McNabb. McNabb* was *intended* to bring a presumption to the aid of the conveyance contestant, who lacked access to the evidence of the proponent-beneficiary's contacts with the grantor. However, under *McNabb* as limited by *Keenan* and *Kelley,* a contestant must now come forward with so much evidence of overreaching to obtain the presumption of undue influence that, were that quantum of evidence available, the contestant would almost certainly prevail without the presumption.

The district court resolved this dilemma by taking a middle ground. Instruction 13 allowed the jury to find and utilize a presumption. However, Instruction 20 did not shift the burden of persuasion by clear and convincing evidence as *McNabb* had done. Instead, the court directed the jury to weigh the presumption as it would any other evidence; evidence which the Jamisons could supposedly rebut with something less than a preponderance of the evidence.

The difficulty with Instruction 20, however, is that it amounted to a comment on the evidence. The court effectively commented to the jury that a confidential relationship coupled with the beneficiary's activity in procurement of a conveyance, creates an especially strong inference of undue influence. This instruction departed from the meaning *McNabb* attached to the word presumption. There, the term shifted the burden of persuasion and raised the standard of proof to clear and convincing evidence.

The efficacy of the use of presumptions is widely debated in the literature. The controversy's source lies in the fact that courts have often (sometimes indiscriminately) used the word presumption to reach four quite different basic evidentiary objec-

tives: (1) to shift the burden of production, (2) to shift the burden of persuasion, (3) to comment on the weight of the evidence, or (4) to conclusively establish a fact through a rule of decision. Allen, *Presumptions in Civil Actions Reconsidered,* 66 Iowa L.Rev. 843, 845 (1981).

Professors Thayer and Wigmore have argued courts should use the word presumption to describe only shifts in the burden of production. They reasoned that the remaining evidentiary effects to which courts sometimes apply the label presumption have well-established, more descriptive names. J. Thayer, *Preliminary Treatise on Evidence at the Common Law,* 336–37 (1898); 9 J. Wigmore, Evidence § 2490 at 287–88 (3d.ed. 1940). In short, courts should describe directly the particular evidentiary effect intended rather than using the ambiguous label "presumption." Allen, *supra,* at 862–63. On the other side of the debate, Professor Morgan has argued presumptions should shift the burden of persuasion. Morgan, *Presumptions,* 12 Wash.L.Rev. 255, 281 (1937); *But see,* Morgan, *Some Observations Concerning Presumptions,* 44 Harv.L.Rev. 906, 931–32 (1931). Morgan reasoned that merely shifting the burden of production gives presumptions inadequate effect.

Rules 301 of the Federal Rules of Evidence and the Idaho Rules of Evidence adopt the Thayer-Wigmore approach:

> In all civil actions and proceedings not otherwise provided for by statute or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with the evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast. I.R.E. 301 (1985).

This rule provides two major benefits. First, it standardizes the definition of the word presumption. The rule merely requires the courts to instruct directly on those evidentiary objectives rather than referring to them as presumptions. The rule

simply means that when courts use the word presumption, and it is not otherwise defined by statute or the Rules of Evidence, then it shifts the burden of production.

 Second, the rule effectively eliminates the word presumption from jury instructions. Indeed, the comments to Rule 301 advise the courts not to mention presumptions to juries. Burdens of production are relevant only to a court's decision on a motion for directed verdict. For example, assume plaintiff goes forward with evidence of fact P, a predicate fact from which a presumption of fact E, an element of plaintiff's case, arises. Assume further that the plaintiff moves for a directed verdict. If the district court, in its discretion, finds that a reasonable person could infer the existence of fact E from the evidence of fact P, then the court will shift the burden of producing evidence of the nonexistence of fact E to the defendant. The defendant must go forward with sufficient evidence such that the court, in its discretion, finds that a reasonable person could find the nonexistence of fact E. If the defendant goes forward with evidence insufficient for a reasonable person to find the nonexistence of fact E, then the court would have to direct a verdict for the plaintiff on fact E. (Were no presumption in effect, the defendant would have no burden of going forward and the case would go to the jury, despite plaintiff's motion, because of the possibility that the jury would simply disbelieve plaintiff's evidence. This is true at least in those cases where the plaintiff also carries the burden of persuasion.) In those cases in which the defendant introduces such compelling evidence that the court finds no reasonable person could find the existence of E, then the court should direct a verdict on that issue for the defendant. *See,* Comment to Rule 301.

 A Rule 301 presumption relieves the party in whose favor the presumption operates from having to adduce further evidence of the presumed fact until the opponent introduces substantial evidence of the nonexistence of the fact. Comment to

Rule 301. As applied to the instant case, a Rule 301 presumption would operate as follows: If Bongiovi introduced evidence sufficient to show that the Jamisons had a confidential relationship with Vittoria and participated in procurement of the conveyances, then the burden of producing sufficient evidence of the nonexistence of at least one of the four prima facie elements of undue influence would shift to the Jamisons. Those elements are (1) a result suggesting undue influence, (2) a grantor subject to undue influence, (3) an opportunity to exert undue influence, and (4) a disposition to exert undue influence. *Gmeiner v. Yacte*, 100 Idaho 1, 7-8, 592 P.2d 57, 63-64 (1979). If Bongiovi proved a prima facie case, the Jamisons would face a directed verdict if they failed to introduce sufficient evidence such that a jury could reasonably find one or more elements of the *Gmeiner* test had not been met. *See*, Comment to Rule 301. This is how presumptions should function in undue influence cases, as well as other civil cases in which presumptions are utilized.

 A Rule 301 presumption would, at best, help Bongiovi get to the jury. Once there, the bubble [2] would burst, and she would continue to carry the burden of persuasion.[3] Where the evidence does conclusively establish a fact, the trial court should simply instruct the jury that that fact has been established—thus avoiding use of the word "presumption." Reversed and remanded for new trial. Costs to the appellants. No attorney fees awarded.

DONALDSON, C.J., and BAKES and BISTLINE, JJ., concur.

SHEPARD, J., concurs in the result.

BISTLINE, Justice, concurring in the reversal of the judgment below and the remand for further proceedings.

When we heard oral argument in this case I thought, "What a pity that not one other member of the Court utilized the opportunity to correct the law as Chief Justice Donaldson and myself undertook to do in the specially concurring opinion in *Keenan v. Brooks*, 100 Idaho 823, 606 P.2d 473 (1980)." Had one other justice taken the time to verify the mishappenstance of *McNabb v. Brewster*, 75 Idaho 313, 272 P.2d 298 (1954), the law would have been straightened out over six years ago.

At an early time after my appearnace on the Court rather than before it, in *Englesby v. Nisula*, 99 Idaho 21, 576 P.2d 1055 (1978), I sensed that Justice Shepard had never been enchanted by the *McNabb* case:

> However, *McNabb* was strongly criticized in *Kelley v. Wheyland*, 93 Idaho 735, 471 P.2d 590 (1970), and it was suggested that the *McNabb* ruling governing a shift of the burden of proof to the grantee only had validity under circumstances similar to those of *McNabb*. *Id.* at 23, 576 P.2d at 1057.

My thirst whetted, I turned to the *Kelley* opinion which Justice Shepard had also authored:

> We point out initially that the case of *McNabb v. Brewster*, supra, is almost unique in Idaho jurisprudence for several reasons. First, there is no actual agreement of a majority of the court on disposition of the case, and secondly, we do not believe that the portion of *Brewster* relied upon by appellant herein was either necessary or appropriate to the decision in *Brewster*. In *Brewster* an elderly couple was infirm, senile, unable to care for themselves, and could neither read

---

**2.** This is what is refered to as the "bursting bubble theory" of presumptions, that is, the presumption exists to get the case to the jury, and then the bubble bursts; the presumption ceases to operate and the word "presumption" is not presented in the jury instructions. *See Huff v. Standard Life Insurance Co.*, 683 F.2d 1363, 1367 (11th Cir.1982).

**3.** IDJI 213 instructs juries to weigh as evidence the presumption that an accident victim unable to testify at trial exercised due care immediately preceding the accident, except where the defendant proves the plaintiff's negligence. Under rule 301 the presumption would assign to the defendant the burden of producing evidence of the plaintiff's negligence. Since the defendant already has that burden the instruction is unnecessary as well as improper.

nor write. All of the property of the elderly couple was deeded to a daughter because she otherwise refused to care for them. The deed was conditioned upon her obligation to care for her parents for the remainder of their lives. The opinion of the court in *Brewster* stated at 75 Idaho 317, 272 P.2d 300:

> "The evidence is sufficient to justify cancellation of the deed on the ground of Mrs. Brewster's neglect and refusal to care for the decedents [her parents]."

The court then, however, proceeded to discuss a rule indicating that the existence of a fiduciary relationship between the grantor and grantee, coupled with a lack of consideration for the conveyance, placed upon the grantee the burden of establishing that the transaction was fair, just and free from any taint of fraud or undue influence. *Kelley, supra*, 93 Idaho at 737–38, 471 P.2d at 592–93.

In authoring the Court's opinion in *Keenan*, Justice Shepard again voiced dissatisfaction with *McNabb*, but reached the decision that the judgment below could be affirmed on the law of *Gmeiner v. Yacte*, 100 Idaho 1, 592 P.2d 57, 63 (1979), that:

> a close scrutiny of the entire record and an analysis of the result of the execution of the gift deed supports the findings and conclusions of the trial court that the evidence did not give rise to a presumption of undue influence. *Keenan, supra*, 100 Idaho at 826, 606 P.2d at 476.

It seemed to me that if *McNabb* was as inherently unreliable, as Justice Shepard wrote whenever the occasion arose, and with strong recollection of that which Justice Donaldson had written for the Court in *Cole-Collister Fire Protection District v. City of Boise*, 93 Idaho 558, 468 P.2d 290 (1970), then *McNabb* should be revisited, which was not a monumental effort. I explained in my *Keenan* opinion that *McNabb's* fault was only in having applied California case law which was guilty of "interchangeably using 'burden of proof' and 'burden of producing evidence,' but in

so doing they were aware that they were not shifting the burden of persuasion...." and concluded that "*McNabb* should henceforth be read as standing for the proposition that it is the burden of going forward sufficiently to dispel the presumption which shifts—not the burden of persuasion." *Keenan, supra*, 100 Idaho at 828, 606 P.2d at 478.

Obviously, Justice Huntley would have joined that opinion. His today's opinion primarily is based on the same authority, and it is a shame that he was not aboard the Court at an earlier date. Three votes six years ago would have narrowed *McNabb* to its proper confines, which Justice Shepard was clearly in favor of doing, but did not vote for when the opportunity was there.