IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 52429

| | |
|---|---|
| E. JAMES BURKE, power of attorney for DIANE BURKE WALKER, an incapacitated person, | Opinion Filed: October 27, 2025 |
| Plaintiffs-Counterdefendants-Respondents, | Melanie Gagnepain, Clerk |
| v. | |
| JEFFREY BAUGH and JANICE ORMSBY BAUGH, husband and wife, | |
| Defendants-Counterclaimants-Appellants. | |

Appeal from the District Court of the First Judicial District, State of Idaho, Bonner County. Hon. Lamont C. Berecz, District Judge.

Judgment granting summary judgment, affirmed.

Skullnah Legal Service, PLLC; Christine Mellick, Spokane, Washington, for appellants. Christine Mellick argued.

Sandpoint Law, P.C.; D. Toby McLaughlin, Sandpoint, for respondents. Toby McLaughlin argued.

_____

HUSKEY, Judge

This appeal arises from a dispute involving two easements on the property of Diane Burke Walker located in Bonner County, Idaho. Walker's Power of Attorney (POA), E. James Burke, argues the easements are invalid because of Walker's incapacity and Jeffery Baugh's and Janice Ormsby Baugh's (collectively "the Baughs") exercise of undue influence over Walker. The Baughs argue Walker, their long-term neighbor, validly granted them the easements and had the mental capacity to do so. We affirm the district court's judgment granting summary judgment.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

The Baughs and Walker both own real property located in Hope, Idaho. As depicted below, Walker's property has direct access to Lake Pend Oreille, but the Baughs' property, which is located south of Walker's, does not.



Aerial view of Walker's property and the Baughs' property.

Walker primarily used the residence on her property as a vacation home, while the Baughs live in their residence year-round. Because the Baughs were there year-round, they would watch over Walker's property while she was away and the Baughs and Walker were long-time friends.

In early May 2023, friends and family initiated a welfare check on Walker at her home after she stopped responding to phone calls and text messages. Walker, then eighty-four years old, was found alone in her home with no food and was "too weak to walk or even stand up." Walker was admitted to a skilled nursing facility. Nursing staff kept notes on Walker's condition throughout May and June, which detail her struggles with mental cognition and physical capabilities. Walker needed assistance with activities of daily living. On multiple occasions, staff entered her room and found Walker on the floor, unable to get up.

On June 12, the Baughs drove approximately 140 miles from their home to the nursing facility to see Walker. During their visit, the Baughs had Walker sign documents granting them two easements. The Baughs had Walker's signature notarized by a notary they found at the facility. The first easement, titled "Easement for Lake Pump and Waterlines," gave the Baughs permission to construct a pump house on Walker's property and install a pump to draw water from the lake. The agreement granted both Walker and the Baughs the ability to use the water. The Baughs agreed to pay for initial costs for the infrastructure of the pump, pump house, power service, and waterlines from the lake, while each party would be separately responsible to install, maintain, and repair the service lines to each property. The costs of all future repairs and maintenance for the pump house and pump would be shared equally. The pump house was built and the pump installed.

The second easement, titled "Dock Easement," gave the Baughs permission to construct a dock for shared lake access on Walker's property. The Baughs agreed to pay for the "initial costs of construction." The easement included the right for both the Baughs and Walker to dock one boat overnight and for the Baughs to install a boat lift on their side of the dock. After the initial construction, the costs to maintain, improve, repair, or replace the dock were to be shared equally between the Baughs and Walker. Both easements contained provisions that the easements shall run with the land and bind all successor owners of the land, regardless of how title was obtained. At the time the complaint was filed, the dock had not been built.

Upon discovering the easements, Burke, Walker's nephew and POA,[1] sent a letter to the Baughs through an attorney. The letter informed the Baughs that Burke was Walker's POA, and he has been since 2014. The letter asserted that at the time the easements were signed, Walker did not legally possess the mental capacity to grant the easements. The letter requested a return of enclosed "Release of Easements" by September 20. If the easements were released, Burke indicated he would execute a valid easement for the lake pump and waterlines. If the easements were not released, Burke informed the Baughs that he would seek to invalidate the easements due to Walker's incapacity.

The releases were not returned, and Burke filed suit against the Baughs. Therein, Burke sought to have the easements canceled and rescinded on the grounds that: (1) Walker lacked the mental capacity to grant the easements; (2) the easements were the result of undue influence from

---

[1] The document establishing Burke as Walker's power of attorney does not appear in the record. However, Burke's status as Walker's POA is not disputed by the Baughs.

3

the Baughs; (3) enforcement of the easements would be unconscionable; and (4) the easements unjustly enrich the Baughs.

Burke served the Baughs with his first discovery request including interrogatories, requests for production, and requests for admission. Approximately two months later and after getting no response, Burke filed a motion for summary judgment. In support of his motion, Burke filed a memorandum and attached three affidavits. The first affidavit was from Dr. Jameson Lontz, Ph.D., a licensed psychologist; the second was from local real estate agent Becky Freeland; and the third was from Burke. Also attached was the property assessment notice of Walker's property from the Bonner County Assessor, which valued her property at $1,242,015.00.

Dr. Lontz is the Executive Director of Blue Mountain Neuropsychological Associates (Blue Mountain). Blue Mountain performs clinical forensic, psychological, and neuropsychological assessments. Dr. Lontz evaluated Walker at the nursing facility in March 2024. In his evaluation, Dr. Lontz noted that Walker had poor orientation to time, often confusing how long she had been at the facility. Regarding the easements, Walker said she remembered signing "some papers," but couldn't recall if it was in 2023 or 2024. Later in the same conversation, when asked specifically about June 12, 2023, Walker stated she had "*no recollection whatsoever* about that date." Dr. Lontz concluded that, in his expert opinion, Walker was currently incompetent, was incompetent on June 12 (the date she signed the easements), and was not expected to regain competency and therefore will require permanent oversight by Burke, acting as her POA.

Becky Freeland, a local real estate agent, evaluated the effect of the easements on Walker's property. In her affidavit, Freeland explained that those who buy waterfront property want to enjoy their lake access in private. The existence of a shared dock and pump house would defeat that privacy and would devalue Walker's property by about 50 percent.

The Baughs filed a motion requesting additional time to respond to Burke's discovery request, explaining that staffing issues within the attorney's office caused the requests not to get logged and thus, counsel was unaware of the requests until the Baughs were served with the motion for summary judgment. That same day, the Baughs also filed a memorandum opposing Burke's motion for summary judgment.

At a hearing on both Burke's motion for summary judgment and the Baughs' request for additional time, the Baughs clarified that they were seeking to withdraw their admissions, which

4

had been admitted by default, and to have additional time to answer Burke's discovery request. The district court granted the Baughs fourteen days to reply to the discovery request. During that same hearing, the district court heard argument regarding the motion for summary judgment. Thereafter, the Baughs responded to Burke's interrogatories, requests for admission, and requests for production.

The district court granted Burke's motion for summary judgment on the grounds that Walker lacked capacity or, in the alternative, that she was subject to undue influence from the Baughs. Summary judgment was also granted in favor of Burke on the Baughs' counterclaim for unjust enrichment. The remaining causes of action were dismissed as moot. Burke filed a motion for an award of legal costs and attorney fees and a memorandum in support; the Baughs did not timely respond. Approximately two weeks before the hearing, Burke filed a supplemental memorandum seeking additional attorney fees and costs incurred for responding to additional motions. The Baughs filed an objection and memorandum in opposition to the requested costs and fees. A hearing for the motion was held and the district court granted Burke's request for attorney fees and costs. That same day, the final judgment was amended to add the legal costs and attorney fees awarded to Burke. The Baughs appeal.

## II.

## STANDARD OF REVIEW

On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct. App. 1986). Summary judgment is proper if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. I.R.C.P. 56(c). The movant has the burden of showing that no genuine issues of material fact exist. *Stoddart v. Pocatello Sch. Dist. No. 25*, 149 Idaho 679, 683, 239 P.3d 784, 788 (2010). The burden may be met by establishing the absence of evidence on an element that the nonmoving party will be required to prove at trial. *Dunnick v. Elder*, 126 Idaho 308, 311, 882 P.2d 475, 478 (Ct. App. 1994). Such an absence of evidence may be established either by an affirmative showing with the moving party's own evidence or by a review of all the nonmoving party's evidence and the contention that such proof of an element is lacking. *Heath v. Honker's Mini-Mart, Inc.*, 134 Idaho 711, 712, 8 P.3d 1254, 1255 (Ct. App. 2000). Once such an

5

absence of evidence has been established, the burden then shifts to the party opposing the motion to show, via further depositions, discovery responses or affidavits, that there is indeed a genuine issue for trial or to offer a valid justification for the failure to do so under Idaho Rule of Civil Procedure 56(d). *Sanders v. Kuna Joint Sch. Dist.*, 125 Idaho 872, 874, 876 P.2d 154, 156 (Ct. App. 1994). When an action, as here, will be tried before the court without a jury, the trial court as the trier of fact is entitled to arrive at the most probable inferences based on the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). Resolution of the possible conflict between the inferences is within the responsibilities of the fact finder. *Cameron v. Neal*, 130 Idaho 989, 900, 950 P.2d 1237, 1239 (1997). The appellate court exercised free review of the entire record that was before the district judge to determine whether either side was entitled to judgment as a matter of law and reviews the inferences drawn by the district judge to determine whether the record reasonably supports those inferences. *Intermountain Forest Management v. Louisiana Pacific Corp.*, 136 Idaho 233, 235, 31 P.3d 921, 923 (2001). This Court freely reviews issues of law. *Cole v. Kunzler*, 115 Idaho 552, 555, 768 P.2d 815, 818 (Ct. App. 1989).

### III.

### ANALYSIS

The Baughs argue the district court erred in granting Burke's motion for summary judgment because there was a genuine issue of material fact. Specifically, the Baughs argue: (1) the district court had insufficient evidence to conclude there was no genuine issue of material fact and thus, the burden of proof never shifted to the Baughs to provide any evidence to establish the existence of a genuine issue of material fact; (2) the district court erred in granting summary judgment because Burke did not address all of the claims listed in the complaint in the motion for summary judgment; (3) the district court erred in ruling as a matter of law that Burke was entitled to summary judgment because Burke did not establish that Walker was incapacitated or that the Baughs exercised undue influence over Walker to obtain her signature on the easements; and (4) the district court erred in granting Burke's request for attorney fees and costs that were in excess of the statutory maximum.

Burke responds that the district court's decision to grant summary judgment is supported by the record because Burke presented sufficient evidence to establish there was no genuine issue

of material fact as to either Walker's incapacity or the Baughs' exercise of undue influence over Walker.  Burke argues the burden of proof then shifted to the Baughs to establish a genuine issue of material fact, which they did not do.  Specifically, Burke argues that:  (1) he presented sufficient evidence to support the district court's findings that there was no genuine issue of material fact as to Walker's incapacity or the Baughs' exercise of undue influence over Walker; (2) the Baughs did not submit any evidence to contradict the evidence presented by Burke; (3) the district court properly dismissed the remaining claims as moot; and (4) the Baughs waived any challenges to Burke's request for attorney fees and costs and, alternatively, the attorney fees and costs were not in excess of the statutory maximum.

Both parties request attorney fees and costs on appeal.

## A.      Burke Established There Was No Genuine Issue of Material Fact

The record, when reviewed as a whole, provides sufficient admissible evidence to support the district court's conclusion that Burke demonstrated there was no genuine issue of material fact regarding Walker's competency and that the Baughs exercised undue influence in obtaining Walker's signatures for the easements.  The burden of proof then shifted to the Baughs to present facts that would create a genuine issue of material fact on these allegations.

"The nonmoving party must submit more than just conclusory assertions that an issue of material fact exists to withstand summary judgment." *Finholt v. Cresto*, 143 Idaho 894, 896-97, 155 P.3d 695, 697-98 (2007).  "A mere scintilla of evidence or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment." *Id*. at 897, 155 P.3d at 698.  A statement is conclusory if it does not contain supporting evidence for its assertion. *Eldridge v. West*, 166 Idaho 303, 311, 458 P.3d 172, 180 (2020).  A party may not rely on his pleadings nor merely assert that there are some facts which might or will support his legal theory, instead he must establish the existence of specific facts by deposition, affidavit, or otherwise. *Berian v Berberian*, 168 Idaho 394, 401, 483 P.3d 937, 944 (2020).

When an action will be tried by bench trial, the district court is entitled to arrive at the most probable inferences based upon the undisputed evidence before it and grant the summary judgment despite the possibility of conflicting inferences. *Wolford v. Montee*, 161 Idaho 432, 437, 387 P.3d 100, 105 (2016).  On appeal, we exercise free review over the entire record that was before the district court to determine whether either side was entitled to summary judgment, as well as review

7

the inferences drawn by the district court to determine whether the record can support those inferences. *Id.*

At the hearing on the summary judgment motion and the motion for additional time, the Baughs stated that they were asking for additional time to respond to Burke's discovery request, not the motion for summary judgment. Burke argued that even if the Baughs' motion was granted, he was still entitled to summary judgment because the Baughs did not present evidence to contradict Dr. Lontz's evaluation. The Baughs did not challenge Dr. Lontz's qualification as an expert witness nor file a motion to strike. Instead, the Baughs claim that they were never required to submit evidence to contradict Burke's claims because Dr. Lontz's report was insufficient to establish Walker's lack of competency or that she was a person subject to influence. Therefore, they argued that Burke never established the absence of a genuine issue of material fact. The district court correctly concluded that Burke established there was no genuine issue of material fact, and the burden of proof then shifted to the Baughs to put forth evidence showing that at the time the easements were executed: (1) Walker was competent; and (2) they did not exert undue influence over Walker.

### 1. Walker's mental capacity

Idaho has two statutes regarding the lack of capacity to legally contract. Idaho Code § 32-106 states: "A person entirely without understanding has no power to make a contract of any kind, but he is liable for the reasonable value of things furnished to him necessary for his support or the support of his family." Related is I.C. § 32-107, which states: "A conveyance or other contract of a person of unsound mind, but not entirely without understanding, made before his incapacity has been judicially determined, is subject to recission."

Under Idaho law, the competency to contract is a higher standard than that required to execute a will. *McPheters v. Hapke*, 94 Idaho 744, 746, 497 P.2d 1045, 1047 (1972).

> The test of mental capacity to contract is whether the person in question possesses sufficient mind to understand, in a reasonable manner, the nature, extent, character, and effect of the act or transaction in which he is engaged; the law does not gauge contractual capacity by the standard of mental capacity possessed by reasonably prudent men. It is not necessary to show that a person was incompetent to transact any kind of business, but to invalidate his contract it is sufficient to show that he was mentally incompetent to deal with the particular contract in issue.

*Olsen v. Hawkins*, 90 Idaho 28, 33, 408 P.2d 462, 464-65 (1965). In this case, the record contains evidence that Walker was not competent to enter the contract for the easements on June 12, 2023.

8

First, Walker was living at a skilled nursing facility and had been there for approximately five weeks at the time the Baughs obtained the easements. Prior to Walker being admitted to the facility, friends noted she was "acting strangely," "wasn't making sense," and her house was messy. In May 2023, a doctor informed Walker's family she was demonstrating a decline that had become more pronounced in the preceding months but likely had been escalating "over the last couple of years." Also in May, another doctor noted Walker had a "decline in functioning and worsening dementia over the last several weeks." Following Walker's admittance to the facility, Burke took over Walker's finances and discovered Walker had not been paying her bills for approximately six months.

Likewise, in May, a speech and language practitioner at the nursing facility noted Walker had deficits in "word retrieval, memory, attention, auditory comprehension, and problem-solving." In May and June, that same practitioner noted Walker's performance on the Montreal Cognitive Assessment (MoCA):[2] on May 9, Walker scored 10/30; on May 25, Walker scored 17/30; on June 13, just one day after Walker signed the easements, she scored 14/30; and on June 29, Walker scored 9/30. The practitioner noted that "the *cutoff score* for MoCA is 26/30." Additionally, there are several notes from medical staff throughout May and June 2023 noting Walker's lack of orientation. On June 6, Walker was oriented on only two spheres. On June 12, the day that the Baughs had Walker sign the easements, a registered nurse noted Walker was oriented on only two spheres. The following day, Walker was again oriented on only two spheres and the nurse noted Walker's confusion and inability to communicate her needs to the staff.

During Walker's examination with Dr. Lontz, Walker was confused about what year she signed the easements. Walker was also confused about how long she had been at the nursing facility and the date she was admitted. Walker said she had no memory of getting to the facility. Later in the conversation, Walker stated she did not remember the Baughs coming to visit her at all, but that someone informed her they had come. Walker described the event as the Baughs "suddenly showed up one morning" and asked her to sign something. Walker was able to recall that the plan was to run a water line from the lake to her home and to build a dock but again

---

[2] The Monreal Cognitive Assessment (MoCA) is a commonly used in-office tool to evaluate short term memory, visuospatial abilities, executive functions, attention, concentration, working memory, language, and orientation to time and place. *See generally MoCA Test*, https://www.mocacognition.com/the-moca-test/ (last accessed September 2, 2025).

expressed that she didn't remember the Baughs coming to visit her. Walker explained she signed the papers because she "trusted [Jeffrey Baugh] . . . [and] had no reason not to trust him."

Dr. Lontz concluded that during May 2023, Walker was experiencing delirium superimposed upon a developing neurocognitive disorder and that the delirium continued "through *at least* the end of June, 2023." Furthermore, Dr. Lontz determined Walker was not competent at the time of his examination (March 15, 2024) and is not expected to regain competency.

The Baughs take issue with several parts of Dr. Lontz's report. Specifically, they argue the report does not establish the absence of a material fact regarding Walker's competency because several of Walker's test scores resulted in "average or high average" results. Dr. Lontz, however, warned that viewing test results in isolation is improper:

> *No single test is intended to provide formal identification of cognitive and/or psychological dysfunction. Assessment methods applied herein were used in conjunction with one another to support findings. Please note that the data contained within this report is not complete unless considered in its entirety, and that clinical judgment augmented results. Developmental, education, medical, psychiatric, and neurological data are considered when interpreting Neuro/Psychological results. Non-Neurological factors such as mood problems, medication effects, pain symptoms, sleep difficulties, and fluctuating effort must also be considered when determining an examinee's overall abilities.*

Dr. Lontz's report is sixteen pages in total. The Baughs highlight two sections of the report and compare discrete pieces of information contained in those sections to challenge Dr. Lontz's conclusion.

First, the Baughs point to two pages of Dr. Lontz's report and state, "The [e]valuation indicates that Ms. Walker was average, high average, or above average in areas of Intellect, Memory, Academic Achievement, Sensorimotor, Language, and Psychosocial." They argue that "Dr. Lontz's evaluation also does not sufficiently address how Ms. Walker can score an average or high average on almost every test that he gives to her but still be incompetent at the time of the evaluation." Dr. Lontz's report ultimately concluded that Walker lacked capacity. Dr. Lontz made clear that he relied not on any one test or even all the tests, but he also considered the nursing notes and other information provided to him. Dr. Lontz made clear in his report that no single test is intended to provide formal identification of a cognitive dysfunction and cannot be viewed in isolation. Intellect and competency are not the same, and being intelligent is not inconsistent with lacking capacity. Moreover, the Baughs' opinion regarding the purported discrepancy is insufficient to create a genuine issue of material fact.

10

The Baughs then challenge Dr. Lontz's conclusion that Walker was currently incompetent but that she also "understood the rights and evaluation process" after explanatory conversations. An individual may have capacity to consent to an evaluation and not have the capacity to contract because standards for the processes are not the same. The Baughs do not argue that the two standards share similarities nor provide any evidence to suggest as much. As the expert, Dr. Lontz concluded that Walker was competent to consent to the evaluation but was incompetent to handle her own affairs. The Baughs' disagreement with Dr. Lontz's conclusion, based only on their opinion, does not mean there was no genuine issue of material fact. If the Baughs wanted to establish that perceived contradictory findings created a genuine issue of material fact, they should have submitted evidence demonstrating as much or objected to the lack of foundation for the conclusions and moved to strike.

Next, the Baughs argue that Burke fails to provide any evidence from individuals with knowledge of Ms. Walker's state of mind on the day she signed the easements. This argument is unsupported in the record. As detailed in the "Records Review" section of Dr. Lontz's report, the report is full of notes from several medical professionals documenting Walker's mental status during the relevant time frame, including the day the easements were executed. The Baughs presented no evidence, other than their opinion, to contradict the evidence. Based on the evidence before the district court, Dr. Lontz's report, when viewed in its entirety, establishes that Walker lacked capacity to grant the easements and was subject to undue influence from the Baughs.

Given the evidence in the record, the district court did not err in concluding there was no issue of material fact regarding Walker's competency to grant the easements to the Baughs on June 12, 2023.

### 2. Undue influence

To prevail on a claim of undue influence, four factors must be present: (1) a person is subject to influence; (2) there is an opportunity to exert undue influence; (3) there is a disposition to exert undue influence; and (4) a result that indicates undue influence. *Gmeiner v. Yacte*, 100 Idaho 1, 6-7, 592 P.2d 57, 62-63 (1979). Once an initial showing has been made, the burden shifts to the proponent of the instrument to show that no undue influence existed. *Matter of Est. of Smith*, 164 Idaho 457, 475, 432 P.3d 6, 24 (2018). Additional factors relevant to the question of undue influence include

> the age and physical and mental condition of the one alleged to have been
> influenced, whether he or she had independent or disinterested advice in the

transaction, the donee's activity in procuring the gift or benefaction, the improvidence or unreasonableness of the gift or transaction, predisposition to make the transfer in question, the absence or inadequacy of consideration for any contract made, the extent of the transfer in relation to the victim's whole worth, the necessities and distress of the person alleged to have been influenced, the victim's unnatural disposition of his or her property or failure to provide for all of his or her children in case of a transfer to one of them, active solicitations and persuasions by the other party, concealment of the transaction, and the relationship of the parties.

25 AM. JUR. 2D *Duress and Undue Influence* § 37 (2025); *see also Matter of Est. of Smith*, 164 Idaho at 479, 432 P.3d at 28; *In re Est. of Conway*, 152 Idaho 933, 939, 277 P.3d 380, 386 (2012); *Gmeiner* 100 Idaho at 6-7, 592 P.2d at 62-63. A disposition that appears to be unnatural will still be upheld by the court if it can be determined to be the true intent of the grantor. *Englesby v. Nisula*, 99 Idaho 21, 576 P.2d 1055 (1978).

In *Gmeiner*, the Court held that a prima facie case of undue influence was met when a woman, named Beryl, who, in her late 70s suddenly transferred most of her property to her much younger friend, Yachte. *Gmeiner*, 100 Idaho at 9, 592 P.2d at 65. The Court noted that Beryl's health had been failing so badly at the time of the property transfers that she had been removed as executrix of her father's estate. *Id.* Also of concern to the Court was that Beryl had not been in contact with her relatives and Yatche was active in setting up "many of the transactions at issue." *Id.* The Court noted that the beneficiary of a grantor's largesse will be viewed more suspiciously if he has been active in encouraging the transfer, in contacting the attorney, or in preparing and typing the documents. *Id.* at 8, 592 P.2d at 64. The Court also explained that it will look closely at transactions where unfair advantage appears to have been taken of one who is old, sick or enfeebled. *Id.* at 7, 592 P.2d at 63. "In particular, the court will manifest concern for a grantor who has been proven incapable of handling his or her own business affairs, who is illiterate, or who has undergone marked deterioration of mind and body shortly before the grant." *Id.*

We agree with the district court that Burke met his burden of proof to establish his claim the Baughs exercised undue influence. First, the record contains pages of notes from medical professionals detailing Walker's cognitive and physical decline for the months preceding and following the execution of the easements. In May 2023, Walker's primary care physician noted having a discussion with Walker's family about her decline and stated, "I do not feel [Walker] understands the severity of her medical condition and prognosis . . . I do not think she will make a full recovery or be able to live independently again." Also, in May, another doctor noted that Walker presented for emergency services due to "decline in functioning and worsening dementia

12

over the last several weeks." Second, Walker was aware that her competency had declined and had selected her nephew, Burke, to serve as her POA and to manage her finances. Third, Dr. Lontz's professional opinion was that Walker was incapacitated and unlikely to regain the capacity to enter into contracts.

As to the exercise of undue influence, the Baughs enlisted an attorney to draft the easements and there is no evidence Walker had independent advice before signing the easements. The Baughs then drove approximately 140 miles to the nursing facility, where Walker lived because of her declining memory and cognition issues, to have her sign the easements. Walker usually consulted Burke for advice but did not contact him regarding the easements. The Baughs paid no money to Walker for the easements and had an established, long-term friendship with Walker. Indeed, Walker explained she signed the easements because she " trusted [Jeffrey Baugh] . . . [and] had no reason not to trust him."

The Baughs are correct in their assertion that under Idaho law there is a presumption of competence in contracting. However, they are incorrect in their claim that Burke and Walker did not present *any* evidence outside of what they assert is the "inadmissible admissions" of Dr. Lontz's evaluation that "Ms. Walker was a person subject to influence." As discussed above, there were nursing notes and other documentation of Walker's declining mental capacity. The record contained sufficient evidence, when taken as a whole, to establish there was no genuine issue of material fact regarding Walker's capacity or the Baugh's exercise of undue influence over Walker. The district court did not err in concluding Burke met the initial burden.

3. **Because Burke established there was no genuine issue of material fact, the burden shifted to the Baughs to demonstrate, from their pleadings, that there was a genuine issue of material fact**

Once Burke established there was no genuine issue of material fact as to Walker's incapacity and the Baughs' undue influence, the burden shifted to the Baughs to submit admissible evidence to establish a genuine issue of material fact. The Baughs did not do so. As a result, the Baughs submitted no evidence, declarations, affidavits, or deposition testimony to rebut the claim regarding Walker's competency. Instead, they asked the district court to look to their pleadings to meet their burden of proof. For example, the Baughs directed the district court to their answer, where they state that "on information and belief, Ms. Diane Burke Walker is not subject to any guardianship or conservatorship" and "on information and belief, Ms. Diane Burke Walker is competent to handle her own affairs." In their memorandum in opposition to Burke's motion for

13

summary judgment, they asserted that "a reasonable trier of fact could dismiss Dr. Lontz's conclusions."

The Baughs also argued that the record, taken in its entirety, "demonstrates that there are genuine issues of material fact." Their primary reasoning rests on the fact that their answer was verified, and therefore the district court could rely on it as a statement in opposition. In support of this argument, the Baughs cite to *Esser Elec. v. Lost River Ballistics Tech*., 145 Idaho 912, 188 P.3d 854 (2008). The Baughs are correct that in *Esser* the Idaho Supreme Court noted that a motion for summary judgment can be countered by sworn affidavits in the record in compliance with I.R.C.P. 56(c)(4). *Esser Elec.*, 145 Idaho at 918, 188 P.3d at 860. Idaho Rule of Civil Procedure 56(c)(4) requires that an affidavit filed to oppose a motion be made on personal knowledge, set forth facts as would be admissible in evidence, and affirmatively show that the affiant is competent to testify on the matters stated.

What the Baughs fail to note, however, is the Court also clarified that statements in a verified pleading that are conclusory or speculative will not satisfy either the requirement of admissibility or competency under I.R.C.P. 56(c)(4). *Esser Elec.*, 145 Idaho at 919, 188 P.3d at 861. In this case, the district court noted that while the Baughs' answer was verified, the statements within were conclusory:

> The issue is not whether or not the Baughs pleading was verified (it was) the problem is that the sum total--*the entirety*--of the verified pleading which addresses the issue of Ms. Walker's competency consists of one conclusory sentence. In paragraph 10 of the Baugh's answer it is asserted: "On information and belief, Ms. Diane Burke Walker is competent to handle her own affairs." In light of the Plaintiff's evidence, this lone sentence falls well short of creating a genuine issue of material fact.

(Footnote omitted.)

The Baughs' belief that Walker was competent is not evidence, and such a statement cannot create a material question of fact. *Valiant Idaho, LLC v. VP Inc.*, 164 Idaho 314, 327, 429 P.3d 855, 868 (2018). Whether or not the Baughs believed Walker was competent to handle her own affairs is insufficient to contradict the evidence presented by Burke that Walker was incompetent. The Baughs presented no evidence except their opinion that they did not exert undue influence. Because Burke established there was no genuine issue of material fact regarding Walker's lack of competency and the undue influence exercised by the Baughs, the burden shifted to the Baughs to establish the existence of a genuine issue of material fact. The Baughs did not present evidence to

14

demonstrate there was a genuine issue of material fact and their pleadings contain only conclusory allegations. Thus, the district court did not err in granting summary judgment in favor of Burke.

**B.      The District Court Properly Granted Summary Judgment on the Baughs' Counterclaim and Found that the two Remaining Causes of Action were Moot**

The Baughs argue the district court erred by "granting summary judgment and issuing a final judgment when [Burke] had failed to request summary judgment on each of the claims or defenses outlined in [his] complaint." The Baughs are mistaken. The district court granted summary judgment on Burke's first two claims: lack of capacity and undue influence. The legal effect of this was that the easements were both rescinded. Therefore, it was unnecessary to address Burke's remaining causes of action (unconscionability and unjust enrichment) because the easements were void. As such, the remaining causes of action were rendered moot and there was no error in dismissing the causes of action.

The Baughs next argue it was improper to grant summary judgment in favor of Burke on the Baughs' counterclaim for unjust enrichment. The Baughs again argue the district court erred by not considering their verified pleading, which they assert demonstrated a genuine issue of material fact. However, the district court did consider the verified pleading in granting summary judgment, explaining:

> Their pleadings are verified such that the Court could consider them factual, but they remain conclusory and inadequate to raise a genuine issue of material fact. While the Baughs' pleading regarding their counterclaim is slightly longer--three sentences--the pleading remains conclusory:
>
> 5.      Defendants at their own cost and labor constructed infrastructure to provide both Ms. Walker's and Defendant's property with water.
> 6.      Defendants purchased the materials and undertook the labor in consideration for the easements in lieu of monetary payments.
> 7.      Plaintiff's property value benefits from this dedicated water source.

The district court then stated, "At best, this pleading presents (maybe) a scintilla of evidence to support the Baughs' claim for unjust enrichment." The Baughs did not attach any evidentiary proof of these claims, such as receipts. The district court was correct to conclude that under Idaho precedent, "'a mere scintilla of evidence, or only slight doubt as to the facts is not sufficient to create a genuine issue of material fact for the purposes of summary judgment.' *Owen v. Smith*, 168 Idaho 633, 641, 485 P.3d 129, 137 (2021)." Because the Baughs did not support their claim with admissible evidence, there was no genuine issue of material fact as to the counterclaim of

unjust enrichment and the district court did not err in granting summary judgment in favor of Burke on this claim.

## C.     Attorney Fees and Costs

After summary judgment was granted, Burke filed a motion for award of legal costs and attorney fees and a memorandum of costs and attorney fees in the amount of $27,180.99. Final judgment in favor of Burke was entered. Burke filed a supplemental memorandum in support providing additional legal argument, but the amount requested did not change. This amount included the amount Dr. Lontz charged for his evaluation. A hearing was scheduled on the matter.

Approximately two weeks before the hearing, Burke filed a supplemental memorandum seeking additional attorney fees and costs incurred in the amount of $1,600.50 for responding to additional motions, for a total requested amount of $28,805.49. The Baughs filed an objection and memorandum in opposition to the requested costs and fees.

The district court heard argument and subsequently issued a memorandum decision and order granting Burke's motion for costs and fees. Both parties request attorney fees on appeal.

### 1.     Attorney fees in the district court

The district court found that the Baughs waived any objection to the initial request for costs and attorney fees filed by Burke by not timely responding within fourteen days, as required by I.R.C.P. 54. The district court alternatively found that the award of attorney fees was permitted under the terms of the easement and pursuant to I.C. § 12-121. On appeal, the Baughs argue the district court erred in granting attorney fees because: (1) they did not defend the action frivolously; (2) Burke was not entitled to summary judgment; and (3) Burke's expert witness, Dr. Lontz, did not appear in court or in a deposition. The Baughs argue that the only amount Burke is entitled to is $366.74 for filing fees and the cost of service.

We agree with the district court that any objection to Burke's initial request for attorney fees and costs, including the amount of or entitlement to Dr. Lontz's fees, totaling $27,180.99 was waived by the Baughs because they did not timely file an objection as required by I.R.C.P. 54. As to Burke's supplemental request for attorney fees and costs, a difference of $1,600.50, the district court found that although the Baughs timely objected to the supplemental motion, they raised no particular objection to the supplemental amount of $1,600.50. Despite the lack of a specific objection, the district court nonetheless analyzed the objection and found that for the same reasons

it granted Burke's initial request for attorney fees, it would similarly grant the request for the additional $1,600.50.

As to the two substantive bases upon which the district court awarded attorney fees, the district court first found the easements themselves contained language providing that the prevailing party would be awarded attorney fees. The Baughs argued that this provision was not applicable in the current action because Burke was seeking to render the easements unenforceable. The district court found this argument unconvincing, as the Baughs were the party seeking to enforce the easements and they had the opportunity to release the easements and avoid the entire litigation.

The dock easement, as well as the water pump easement, contain identical provisions regarding attorney fees. The provisions read as follows:

> Enforcement. In the event of an action to enforce or interpret the provisions of this document, the parties agree to participate in at least four (4) hours of mediation prior to filing any action in court. The parties shall equally share the mediation costs. The prevailing party in any action to enforce or interpret the terms of this easement shall be awarded reasonable attorney's fees.

This Court has held that where a contract is unenforceable, the prevailing party may nonetheless be entitled to an award of attorney fees under the contract. *Yates v. Hull Farms, Inc.*, 175 Idaho 185, 189, 563 P.3d 1246, 1250 (Ct. App. 2025). Here, the original language in the easements provided for the prevailing party to be awarded attorney fees. Burke was the prevailing party, and the district court did not err in awarding Burke his requested attorney fees.

In the alternative, the district court found that attorney fees could also be awarded to Burke pursuant to I.C. § 12-121. An award of attorney fees may be granted under I.C. § 12-121 to the prevailing party and such an award is appropriate when the court finds that the case has been brought or defended frivolously, unreasonably, or without foundation. The district court found that the Baughs presented no evidence to show Walker had capacity to sign the easements besides the conclusory statements in their own pleadings. The district court concluded that the Baughs defended the case frivolously, unreasonably, and without foundation. Because we are awarding attorney fees pursuant to the easement provisions, we need not further address I.C. § 12-121.

Because the Baugh's waived any challenge to the entitlement to or amount of attorney fees, or alternatively, because reasonable attorney fees were awarded pursuant to the terms of the easement, the district court did not err in awarding Burke attorney fees and costs in the total amount of $28,781.49.

17

**2.      Attorney fees on appeal**

Both parties request attorney fees and costs on appeal.  The Baughs request attorney fees pursuant to the easements.  Burke requests attorney fees pursuant to the terms of the easement and I.C. § 12-121.  As discussed above, the language in the easements provided for the prevailing party to be awarded attorney fees.  Because Burke is the prevailing party on appeal, he is entitled to attorney fees on appeal.  Because we are awarding attorney fees pursuant to the easement provisions, we need not address whether Burke is entitled to attorney fees pursuant to I.C. § 12-121.

## IV.

## CONCLUSION

We affirm the district court's judgment granting summary judgment in favor of Burke, the dismissal of the Baughs' counterclaim, and the award of attorney fees and costs to Burke.  Costs and attorney fees on appeal are awarded to Burke.

Chief Judge GRATTON and Judge LORELLO, **CONCUR**.